Argued and submitted April 26, affirmed November 15, 1989

## STATE OF OREGON,
*Respondent,*

*v.*

## KIM TONY CODR,
*Appellant.*

### (87-03-31416; CA A47822)

782 P2d 442

Sally L. Avera, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Linda DeVries Grimms, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Defendant appeals her conviction for possession of a controlled substance, ORS 475.992(1)(b), asserting that the trial court erred when it denied her motion to suppress. We affirm.

On March 2, 1987, at 3:14 p.m., Pierce, a security officer at Oregon Health Sciences University, saw defendant in a 1972 Cadillac that was parked in a poorly lighted section of the hospital's parking structure. He observed that the engine was running and that a person inside the car was using a flashlight and doing something under the dash in the area of the wiring. He testified that he saw the flashlight moving around and that he could see some of the wiring being moved around. Pierce was aware that there had been a number of "car prowls" on the campus and that that day a car stereo had been reported stolen from a car at a nearby location. He called for the assistance of other security officers and continued to watch the activities in the car. He testified that he did not attempt to conceal himself while he was watching. When the other security officers arrived, one of them asked defendant for identification. She gave him an Oregon Motor Vehicles Identification card in her name, a vehicle registration for the car in another person's name and a handwritten bill of sale for a 1972 Cadillac from the registered owner to a third person. She obtained those documents from a bag in the car. Defendant told the security officer that the purchaser named in the bill of sale was her boyfriend.

Two Portland police officers arrived at 3:50 p.m. They were told what the security officers had seen and that there had recently been a rash of car prowls at the hospital, including a car radio theft that day. One of the police officers, Nelson, asked defendant if the car was hers. She said that it was, gave him the registration and bill of sale and told him that she was living with the person shown on the bill of sale as the purchaser. Nelson asked what she was doing at the hospital. She explained that she was waiting for a friend who was an outpatient, but that she did not know where her friend had gone. She would not give her friend's name. Nelson did not see any signs of forced entry of the car, which he described as "real ratty." He saw a key in the ignition. He also asked defendant whether she used drugs and requested to see her arms. He

observed fresh needle marks on her arms, and defendant admitted that she had used drugs a few days earlier. He then arrested her for violation of a city ordinance prohibiting entering a motor vehicle without consent of the owner. City of Portland Code § 16.26.100.

Defendant was handcuffed and put in the back of the patrol vehicle. She asked Nelson to get her possessions out of the car, stating that a coat and some bags were hers. He went to the car to get her things and also to search for evidence of items taken or tampered with in the car. He observed that the wires from the stereo were hanging down, but were not disconnected. He found a number of bags in the car, including a large blue one, a purse and a coat. Nelson then opened the blue bag. He testified that he did so to determine if it was defendant's property and to see if there were any items, such as a credit card, that could have been taken from the car. In the bag, he found an $8 \times 5 \times 1\text{-}1/2$ inch green makeup bag in which there were six small bags containing white powder, two syringes, a spoon and some makeup. Defendant was then arrested for possession of controlled substances.

■   Defendant argues that the trial court erred in denying the motion to suppress the evidence seized from the car. She argues that the encounter was a stop under ORS 131.605(5) and that it was not authorized under ORS 131.615,[1] because the police did not have a reasonable suspicion that she had committed a crime. The state agrees that a stop occurred when Nelson first questioned defendant. The remaining issue is whether Nelson had a reasonable suspicion that defendant had committed a crime. The term "reasonably suspects" is defined by ORS 131.605(4):

> " 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts as authorized in ORS 131.605 to 131.625."

Nelson was told by hospital security officers that defendant had been seen working under the dashboard of the car with a

---

[1] ORS 131.615(1) provides:

"(1)   A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

flashlight in the area of the wiring and that there had been a rash of car prowls in the area, including one that day. Although he saw that there were keys in the car, he explained that that did not dispel his suspicion because, in his experience, a substantial number of car thefts in the Portland area occur in cars in which the owner has left the keys. He also observed that the car did not show any signs of forced entry, but did not find that determinative, because the car was "real ratty" and it was not possible to tell if entry was forced. Nelson's suspicion that she had committed the crime of entering a vehicle without the consent of the owner was reasonable under the circumstances.

■      Defendant also argues that the police exceeded the permissible scope of inquiry under ORS 131.615(2) and (3).[2] She contends that, once she produced the documentation for the car and explained her relationship with the owner, any suspicion concerning her activities dissipated and the inquiry should have ended. However, the documents themselves did not connect her to the car. Although she offered an explanation for why she was not named in them, Nelson was not required to accept her explanation as true. *State v. Owens,* 302 Or 196, 202, 729 P2d 524 (1986).[3]

**3.**      Defendant next argues that Nelson did not have probable cause to arrest her for unlawful entry of a vehicle. "Probable cause" means that there is a substantial objective basis for believing that it is more likely than not that the offense has been committed and that the person has committed it. ORS 131.005(11). We find that Nelson did have probable cause to believe that defendant had committed unlawful entry of a vehicle. Her suspicious behavior in the car, her inability to establish a definitive connection between herself

---

[2] ORS 131.615(2) and (3) provide:

"(2)  The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3)  The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

[3] Defendant also argues that Nelson exceeded the permissible scope of inquiry when he asked her about her drug use. It is questionable whether those questions were sufficiently connected to the immediate circumstances that aroused the officer's suspicion. ORS 131.615(3). However, it is unnecessary to decide whether the inquiry was improper, because defendant's initial arrest was not based on any information concerning drug use nor was the information relied on to justify the search of her bags.

and the car, her failure to identify the person for whom she was supposedly waiting or to provide information as to where that person was and Nelson's knowledge that a number of similar offenses had recently occurred in the immediate area provided a substantial objective basis for believing that it was more likely than not that she had committed an unlawful entry.

Finally, defendant argues that the searches of the large blue bag and the green makeup bag inside it were unlawful. She acknowledges that, if her arrest for entry of a vehicle without the owner's consent was valid, it was permissible to search her possessions for evidence of that offense. She admits that her blue bag could properly have been searched for that purpose, but contends that the opening of the makeup bag, where the drugs were found, was not proper, because it was unreasonable to expect that evidence of unlawful entry of a vehicle would be there.

■ A search incident to arrest, other than a protective custody pat down, must be for evidence of the offense for which the person has been arrested. *State v. Lavender,* 93 Or App 361, 762 P2d 1027 (1988). Consequently, the search must be limited to those areas of the arrestee's person or belongings in the immediate possession at the time of the arrest where evidence of the offense could reasonably be expected to be found. *State v. Owens, supra,* 302 Or at 201-02.

■ Nelson searched defendant's bags looking for evidence that might connect her with the car and for evidence of any unlawful activity in the vehicle. It was reasonable to expect that information concerning ownership of the vehicle could be found in her bags, including the makeup bag. She had previously taken the title documents out of one of the bags. Furthermore, identification of defendant or items that could have been taken from the vehicle, such as credit cards, reasonably might be found in the bags. We hold that searching defendant's bags, including the makeup bag, was justified as incident to her arrest for unlawful entry of a vehicle.

Affirmed.