Argued and submitted November 1, decision of the Court of Appeals affirmed;
judgment of the district court reversed, and case remanded to the district court for
further proceedings December 2, 1994

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## ROBERT WILLIAM MATTHEWS,
*Petitioner on Review.*

(DC 91D 102961; CA A79394; SC S41114)

884 P2d 1224

Kevin T. Lafky, of Lafky and Lafky, Salem, argued the cause for petitioner on review. Elton T. Lafky filed the petition.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

DURHAM, J.

## DURHAM, J.

The issue in this case is whether the Court of Appeals erred in holding that, under ORS 810.410(3)(b), a police officer may stop and detain the driver of a vehicle if the officer has a "reasonable basis" to believe that the driver committed a traffic infraction. *State v. Matthews*, 126 Or App 154, 157, 868 P2d 14 (1994). We affirm the decision of the Court of Appeals.

On the night of May 22, 1991, Officer Frye was driving on a rural highway when he noticed that the headlights of defendant's oncoming truck were shining into his eyes. Frye turned around, followed defendant, and pulled him over. Upon approaching defendant's truck, Frye detected the odor of alcohol emanating from the truck. He also noticed that defendant's face was flushed and that his eyes were watery and bloodshot. After further investigation, Frye arrested defendant for driving under the influence of intoxicants. Frye did not determine the cause of the glare from defendant's headlights.

The trial court granted defendant's pretrial motion to suppress evidence obtained after the stop. The court ruled that the stop was unlawful, because the state failed to prove that defendant actually had committed a traffic infraction. The Court of Appeals reversed, holding that, to justify the stop, the state needs to show only that Frye had a "reasonable basis" to believe that the infraction occurred. *Ibid*. The court concluded that Frye's testimony at the suppression hearing, that defendant's vehicle headlights "appeared to be either on bright or they were aimed up a little too high," provided a "reasonable basis" for him to believe that defendant was operating his vehicle in violation of the motor vehicle laws. *Ibid*.

Defendant does not argue that, if the stop for a traffic infraction was lawful, there was anything impermissible about the subsequent investigation of and arrest for DUII. Instead, defendant argues only that a stop for a traffic infraction is unlawful unless the state proves that the infraction for which the stop was made actually occurred or, alternatively, that the officer making the stop had probable cause to believe that the infraction occurred. Defendant asserts that the

"reasonable belief" standard applied by the Court of Appeals falls short of the requirements of probable cause.

ORS 810.410(3)(b) defines a police officer's authority to stop and detain a motorist for a traffic infraction. That subsection provides that a police officer

"[m]ay stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

The statute states the *purpose* for which an officer may detain a person, *i.e.*, for investigation, identification, and citation concerning a traffic infraction. However, the statute is silent on the question of the level of information about the traffic infraction that the officer must possess in order to effect a lawful stop.

■ The text of ORS 810.410(3)(b) does not require that the state justify a stop for a traffic infraction by proving that the infraction actually occurred. The statute authorizes a police officer, who has stopped someone for a traffic infraction, to conduct an "investigation reasonably related to the traffic infraction." A purpose of this "investigation" is to confirm the existence of the facts that gave rise to the officer's belief that a traffic infraction had occurred. It would make little sense for the legislature to authorize a police officer to "investigate" a traffic infraction *after* making a stop if the statute also required the police officer to know the facts necessary to prove that the infraction actually had occurred *before* making the stop. We reject defendant's argument because neither ORS 810.410(3)(b), nor any other statute to which the parties have called our attention, makes a traffic stop unlawful if the state does not prove that the infraction for which the stop was made actually occurred.

■ We turn to defendant's argument that the Court of Appeals erred in evaluating the lawfulness of the traffic stop under a standard of "reasonable belief" rather than "probable cause." We accept defendant's initial proposition that "probable cause" is the correct statutory standard. Before the enactment of the statute in question, this court held that

"[s]topping a vehicle and detaining its occupants is a 'seizure' of the person within the meaning of the Fourth Amendment

to the Constitution of the United States."[1] *State v. Tucker*, 286 Or 485, 492, 595 P2d 1364 (1979).

In *Tucker*, this court stated that a stop for a traffic infraction

"is reasonable for constitutional purposes based on probable cause when the offense has been committed in the officer's presence and no warrant or additional justification is required." 286 Or at 492.

■ The state argues that ORS 810.410(3)(b) grants a police officer "seemingly unlimited" discretion to stop and detain a person for a traffic infraction and that the constitutional search and seizure provisions require merely that the officer making the stop have a "reasonable suspicion" that the traffic infraction occurred. We reject the state's contention, because we conclude that the legislature did not intend to change the standard applicable to a stop for traffic infraction, *viz.*, probable cause to believe that a traffic infraction had occurred.[2] We have examined the text and context of ORS 810.410(3)(b) and have found nothing to indicate that the legislature intended, by enacting that statute, to modify the probable cause standard that this court determined in *Tucker* was applicable to a stop for a traffic infraction.

■ Having held that a traffic stop must be based on probable cause, we next consider defendant's argument that the Court of Appeals did not apply that standard. This court's cases have explored the requirements of probable cause under

---

[1] The Fourth Amendment to the Constitution of the United States provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Stopping a vehicle and detaining its occupants is also a "seizure" under Article I, section 9, of the Oregon Constitution, which provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

*See State v. Holmes*, 311 Or 400, 409, 813 P2d 28 (1991) (defining "seizure" under Article I, section 9, of the Oregon Constitution).

[2] Accordingly, we need not address the constitutional implications of a statute authorizing a stop for a traffic infraction based on "reasonable suspicion."

Article I, section 9, of the Oregon Constitution.[3] *See, e.g., State v. Owens*, 302 Or 196, 729 P2d 524 (1986) (stating the subjective and objective requirements for probable cause to seize a person or thing). Simply stated, an officer who stops and detains a person for a traffic infraction must have probable cause to do so, *i.e.*, the officer must believe that the infraction occurred, and that belief must be objectively reasonable under the circumstances. Although the Court of Appeals did not state that it was applying a "probable cause" standard in this case, the court's holding that an officer must have a "reasonable basis" to believe that an infraction occurred is the functional equivalent of the probable cause standard that an officer must observe in making a stop pursuant to ORS 810.410(3)(b).[4]

Finally, defendant argues that Frye's testimony failed to establish that Frye had probable cause to believe that an infraction had occurred. Defendant relies on the fact that the officer was unsure whether defendant's headlights were improperly adjusted or were, instead, on the bright setting. Defendant argues that only the latter is a violation of the Motor Vehicle Code and that, because each was equally possible, the state did not meet the probable cause standard.

■ ■ The Court of Appeals concluded that ORS 811.515(8)[5] prohibits driving with improperly adjusted head-

---

[3] We look to the constitutional standard, because there is no legislative probable cause standard applicable to seizures of this type. The legislature *has* defined probable cause, in the context of an *arrest*, as "a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." ORS 131.005(11).

[4] In holding that an officer must "reasonably believe" that an infraction occurred, the Court of Appeals cited *State v. Rivera*, 121 Or App 246, 249, 855 P2d 188 (1993). In *Rivera*, the Court of Appeals stated:

"When there is a dispute about whether an infraction was committed, we examine the facts that the officer relied on in order to determine whether, when viewed objectively, those facts provide probable cause to believe that the infraction had been committed." *Ibid.* (citing *State v. Doherty*, 92 Or App 105, 107, 757 P2d 860, *rev den* 306 Or 660 (1988)).

The citation to *Rivera* reveals that the court understood that, in holding that an officer must have a "reasonable basis" to believe that an infraction occurred, it was applying a probable cause standard.

[5] ORS 811.515(8) provides, in part:

"A light, *other than a headlight*, that projects a beam of light of an intensity greater than 300 candlepower shall not be operated on a vehicle:

"(a) Unless the beam is so directed that no part of the high intensity portion of the beam will strike the level of the roadway on which the vehicle stands at a distance of more than 75 feet from the vehicle * * *." (Emphasis added.)

lights. Defendant maintains that that statute is inapplicable because, by its terms, it applies only to lights *other than headlights*. The state acknowledges that, because of the exclusion, the statute may not apply, but directs our attention to a different statute, ORS 816.050(7),[6] and to administrative rules promulgated pursuant thereto, that do prohibit driving with maladjusted headlights. We agree with the state that those rules are applicable. Notwithstanding Frye's uncertainty about the manner in which defendant's headlights violated the law, or his inability to identify the specific law that defendant's headlights violated, it is clear from Frye's testimony that the events that he observed caused him to believe that defendant had committed an infraction.[7] Because those events probably constituted an infraction, his belief was objectively reasonable under the circumstances. Accordingly, Frye had probable cause, at the time he stopped defendant, to believe that defendant had committed a traffic infraction in his presence. The stop was lawful.

The decision of the Court of Appeals is affirmed. The judgment of the district court is reversed, and the case is remanded to the district court for further proceedings.

---

[6] ORS 816.050(7) states, in part:

"Headlights shall be aimed in accordance with rules adopted by the department."

The Department of Transportation has adopted rules requiring that headlights be aimed so as to minimize unnecessary glare to drivers of approaching vehicles. OAR 735-108-010.

A violation of those rules constitutes an infraction under ORS 816.300, which provides, in part:

"(1) A person commits the offense of operation with nonstandard lighting equipment if the person does any of the following:

"(a) Drives or moves on any highway any vehicle equipped with lighting equipment described under ORS 816.040 to 816.290 that does not meet the standards required for the equipment under ORS 816.040 to 816.290.

"* * * * *

"(3) The offense described in this section, operation with nonstandard lighting equipment, is a Class C traffic infraction."

[7] Although the state has the burden of identifying the specific act that constitutes the infraction that the officer has probable cause to believe was committed, the fact that the state initially identifies the wrong statute applicable to the infraction is immaterial. *See State v. Bea*, 318 Or 220, 224-28, 864 P2d 854 (1993) (holding stop was lawful based, in part, on a statute not relied upon by the state).