In the Matter of the Suspension of
the Driving Privileges of

William Charles POMERENKE,
*Respondent,*

*v.*

MOTOR VEHICLES DIVISION,
*Appellant.*

(9301-00157; CA A80472)

896 P2d 1214

Harrison Latto, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

William Uhle argued the cause for respondent. With him on the brief was Thuemmel & Uhle.

Before Warren, Presiding Judge, and Richardson, Chief Judge, and Landau, Judge.

WARREN, P. J.

Richardson, C. J., dissenting.

## WARREN, P. J.

Motor Vehicles Division (MVD) appeals the circuit court's judgment reversing its order suspending petitioner's driving privileges after he failed a chemical breath test following his arrest for DUII. We affirm.

We state the facts consistent with the findings of the MVD hearings officer. *Jasper v. MVD*, 130 Or App 603, 605, 883 P2d 244 (1994). Deputy Foster notified the police dispatcher that he was following a Saab vehicle, driven by petitioner, and a Geo vehicle, which appeared to be traveling together. Foster told the dispatcher that the Geo "was all over the road." He said nothing about the Saab. Later, two police officers from another jurisdiction began following the Saab and the Geo. They confirmed that the Geo was not staying in its lane. Neither officer reported that the Saab was traveling erratically. The officers attempted to stop the Geo, but it did not immediately pull over. Next, they turned on their police cars' lights and sirens. A "short while" later, the Saab and the Geo entered a store parking lot. The Geo immediately stopped and one officer arrested its driver. The other officer followed the Saab onto the lot, where it stopped and parked.

The officers contacted Deputy Radar, a member of a DUII detection team. Radar had listened to all of the conversations between the officers, the dispatcher, and Foster on his police radio. Radar went to the store parking lot and made contact with petitioner, who smelled of alcohol and admitted that he had been drinking. Radar administered a field sobriety test, and petitioner showed some symptoms of intoxication. Radar arrested him for DUII and asked him to take a chemical breath test. The test disclosed that petitioner's blood alcohol level was .15 percent.

At the hearing, petitioner challenged the reasonableness of the initial stop. The state asked Radar, the only witness at the hearing, whether the officer who followed the Saab into the parking lot said why he had stopped petitioner. Radar answered:

"No. And again, I — I assumed based on the transmission of the two vehicles being together that when they pulled into the [store], the Saab immediately continued straight up

while the [Geo] pulled that way, so the two * * * officers split off. That's all the information I have."

Later, the following colloquy occurred:

"Q. And was there any radio transmission at all about any unusual driving on the part of the Saab?

"A. No — no not that I heard. The only transmissions I heard regarding the Saab and [the Geo] combined was that Civil Deputy Foster had indicated he had seen both of the vehicles exit the Tippee Canoe Restaurant. * * * [A]nd at one point I recall Civil Deputy Foster indicating that it appeared that the two vehicles were travelling together. But that's all I heard regarding the Saab * * *."

After the hearing, the hearings officer found:

"The two vehicles were * * * traveling westbound, with the Geo still failing to maintain its lane of travel. The Saab was still traveling in front of the Geo. Both * * * officers turned on their patrol vehicle overhead lights, later the vehicle sirens, in an attempt to stop the Geo vehicle. The Geo and the Saab continued to travel on the highway, disregarding the emergency vehicles and not yielding the right of way to emergency vehicles, a traffic infraction * * *."

The hearings officer then concluded:

"Both vehicles were failing to yield for the overhead lights of emergency vehicles. The stop of both vehicles for an investigation of why one was being operated in the manner observed and for the infraction of both vehicles failing to yield, was legal and proper."

Petitioner appealed to the circuit court, arguing that the initial stop was invalid. *See* ORS 131.615. The circuit court agreed and vacated the suspension order. MVD seeks a reversal of the circuit court judgment and reinstatement of the suspension order.

Although this is an appeal from a judgment of the circuit court, we review MVD's order. *Oviedo v. MVD*, 102 Or App 110, 113, 792 P2d 1244 (1990). We review for substantial evidence and errors of law. ORS 813.450(4).

MVD argues, relying on *Bish v. MVD*, 97 Or App 648, 776 P2d 1320 (1989), that we should reinstate the order, because petitioner did not raise the issue of whether the initial stop was valid until after the evidentiary part of the

hearing. That argument is based on an erroneous reading of the record. At the *beginning* of the hearing, petitioner's attorney said:

> "I'd like to put [the hearings officer] and Deputy Radar on notice that I'll be challenging the reasonableness of this stop and the probable cause for the arrest, pursuant to [*Bish*] and *Pooler v. Motor Vehicles Division*[, 306 Or 47, 755 P2d 701 (1988)]."

That necessarily placed the validity of the stop at issue. *Fischer v. MVD*, 101 Or App 580, 582 n 1, 792 P2d 445 (1990).

Next, we consider whether the hearings officer erred in concluding that the initial stop was valid. MVD acknowledges that no evidence was presented about why the police stopped petitioner. It argues, however, that the hearings officer correctly concluded that the stop was justified, because facts presented at the hearing show that petitioner committed the traffic infraction of failing to yield the right of way to an emergency vehicle. ORS 811.145. MVD has cited no authority, and we have found none, for the proposition that, when there is *no* evidence about whether a police officer believed that a traffic infraction had occurred before making a stop, the hearings officer may *infer* from other facts the officer's reason for making that stop.

The dissent's reliance on *State v. Matthews*, 320 Or 398, 884 P2d 1224 (1994), as well as the other cases it cites, is unavailing. In fact, the holding in *Matthews* is consistent with our decision here. In *Matthews*, the Supreme Court interpreted ORS 810.410(3)(b), which defines an officer's authority to stop and detain a motorist for a traffic infraction. During its discussion of that statute, the court said:

> "[A]n officer who stops and detains a person for a traffic infraction must have probable cause to do so, *i.e.*, the officer must believe that the infraction occurred, and that belief must be objectively reasonable under the circumstances." 320 Or at 403.

Here, there is *no* evidence that the stopping officer subjectively believed that *any* traffic infraction had occurred. However, *Matthews* makes it clear that there must be *some*

evidence that the officer believed that a traffic infraction occurred before stopping the driver.[1] *Id.* at 404.

In short, "an officer who stops and detains a person for a traffic infraction must have probable cause to do so." 320 Or at 403. The state refers us to no authority, and we find none, for the novel proposition that a hearings officer may, after the fact, manufacture a *reason* that justifies a stop in the absence of any direct evidence about whether the officer believed that an infraction had occurred and that such a belief was reasonable under the circumstances.

The police officer who stopped petitioner did not testify, nor did he tell Radar why he made the stop. The hearings officer's conclusion that petitioner was stopped because he failed to yield to an emergency vehicle is pure conjecture. The hearings officer erred as a matter of law in concluding that the initial stop was lawful, because there was no evidence on which to base that conclusion.

Petitioner's arrest and the chemical breath test was a consequence of, and depended on, the unlawful stop.

Affirmed.

---

[1] Moreover, the testimony the dissent relies on as objective evidence about the circumstances of the stop is, in context, contradictory.

Radar first testified:

"I * * * heard Officer Fulton indicate to the Net-4 dispatcher that they were attempting to stop the Geo Tracker, but the vehicle wasn't pulling over. A minute or two later, I then heard Officer Fulton indicate that they were attempting to use both lights and siren. A short while later Officer Fulton came back on the air and indicated that both the Saab and the Geo Tracker had pulled into a Thriftway Restaurant * * *."

Later the hearings officer asked Radar about the radio transmissions that he had heard, and Radar said:

"[T]he first transmission I heard was [that] * * * we're with [the Saab and Geo]. A short while later, I then heard Officer Fulton indicate to the dispatch that they were going to attempt a traffic stop to get *the vehicle stopped.* Then a short while later, I heard Officer Fulton notify the dispatcher that *the vehicles aren't stopping.* They're not responding to lights or sirens. And then a short while later they're pulling into the Thriftway * * *." (Emphasis supplied.)

In context, Radar's testimony suggests that Fulton attempted to *stop the Geo,* and, a "short while later," both vehicles pulled into a parking lot. Without more, that vague description of the time that preceded the Saab's response to the police cars' lights and sirens provides insufficient *objective* evidence of what facts the stopping officer relied on to make the stop.

**RICHARDSON, C. J.,** dissenting.

The only issue in this case is whether the initial "stop" of petitioner was lawful.[1] The MVD hearings officer concluded:

> "The two * * * officers that were following the vehicles with their overhead lights and sirens operating could also reasonably believe that the two vehicles were, and had been traveling together, based on their observations and radio information. * * * Both vehicles were failing to yield for the overhead lights of emergency vehicles."

He held that the stop of both vehicles was lawful because they had failed to yield to an emergency vehicle.

The majority concludes:

> "The police officer who stopped petitioner did not testify, nor did he tell [the arresting officer] why he made the stop. The hearings officer's conclusion that petitioner was stopped because he failed to yield to an emergency vehicle is pure conjecture. The hearings officer erred as a matter of law in concluding that the initial stop was lawful, because there was no evidence on which to base that conclusion." 134 Or App at 635.

The majority does not recite a principle of law; however, the implication from its conclusion is that the officer must articulate a subjective reason for the stop regardless of whether it was an otherwise justifiable stop.

In *State v. Matthews*, 320 Or 398, 884 P2d 1224 (1994), the court said that a traffic infraction stop was valid if the stopping officer believed an infraction had been committed and that belief was objectively reasonable under the circumstances. Provided the stop is justifiable based on the probable cause test set out in *Matthews*, an officer's motive or

---

[1] One principal argument of MVD was that petitioner did not properly raise the issue of the stop before the hearings officer as required by *Bish v. MVD*, 97 Or App 648, 776 P2d 1320 (1989). The only persons who appeared at the hearing were petitioner, his attorney and the arresting officer. Petitioner's attorney, in his opening statement, specifically said he was challenging the stop and cited *Bish* as the reason. He cross-examined the officer about the stop and argued its validity after the close of the evidence. The hearings officer conducted the direct examination of the officer and was aware that the lawfulness of the stop was an issue and fully developed the facts about the stop. I agree with the majority that the issue was raised and litigated and I find it strange that MVD makes an extended argument about preservation.

additional reasons, which may contribute to the decision to make the stop, are irrelevant. *State v. Carter/Dawson*, 287 Or 479, 485, 600 P2d 873 (1979); *State v. Allen*, 112 Or App 70, 826 P2d 127, *rev den* 314 Or 176 (1992). Even if the officer or the state misidentifies the legal or factual predicate for it, the stop may nevertheless be valid if an alternative factual and legal basis exists for it.

For example, in *State v. Doherty*, 92 Or App 105, 757 P2d 860, *rev den* 306 Or 660 (1988), the officer saw the defendant drive from a parking lot and accelerate to a high speed and he heard a loud engine noise. He stopped the defendant and gave him a citation for "exhibition of acceleration" in violation of ORS 811.125(1)(d). The defendant moved to suppress evidence obtained after the stop, arguing that the stop was invalid because there was no objective basis that he had committed the violation for which he was stopped. The trial court agreed that the basis identified by the officer was wrong, but found that there was an objective basis to believe that the defendant had committed the traffic infraction of causing unreasonable noise with his vehicle. ORS 815.025. We agreed and held:

> "Although the officer did not cite defendant for causing unreasonable noise, the facts relied upon by the officer, when viewed objectively, provided probable cause to believe that that traffic infraction had been committed." *Id.* at 107.

*See also Matthews*; *State v. Bea*, 318 Or 220, 864 P2d 854 (1993); *Carter/Dawson*.

It is clear from our opinions and those of the Supreme Court that, in determining the validity of a traffic stop, the focus is on the officer's belief that an infraction occurred and whether that belief is objectively reasonable in the light of the circumstances, not on the officer's motivations for the stop. Here, the majority has sought a particular reason that the officer may have had for making the stop instead of examining the facts surrounding the stop to determine whether the stop was justifiable under *Matthews*.

The majority also contends: "Here, there is *no* evidence that the stopping officer subjectively believed that *any* traffic infraction had occurred." 134 Or App at 634 (emphasis in original). It appears that the majority would require direct

testimony of the stopping officer in order to find evidence in the record about the officer's belief that an infraction occurred. Such direct testimony is not required. *See Gildroy v. MVD*, 132 Or App 235, 888 P2d 64 (1995).

In *Gildroy*, the petitioner argued that because Officer Marsalis, who was present in the room with the petitioner during his phone call, did not testify as to why he was standing near the petitioner, there was no evidence in the record to explain the reason for Marsalis's behavior. Officer Mears, another officer present but not in the room with the petitioner, testified about Marsalis's conduct during the breathalyzer. We determined that, even though Marsalis did not testify, the evidence offered by Mears supported a reasonable inference that Marsalis stood near the petitioner during the phone call to satisfy the requirements of OAR 257-30-020(1)(b). *Id.* at 241. Based on this we concluded that there was evidence in the record to support the hearings officer's findings.

In this case, Deputy Radar testified about the radio transmissions relayed to the dispatcher by Officers Fulton and Foster. Radar testified that the two police vehicles were following petitioner's and the other vehicle and that

"I heard Officer Fulton notify the dispatcher that the vehicles aren't stopping. They're not responding to lights or sirens."

In addition, Radar testified about his conversation with Officer Sharke upon his arrival at the location of the stop:

"I parked my patrol car and I then walked [*sic*] for Officer Sharke and I asked him for — what observations he had made during his contact with Mr. Pomerenke. Officer Sharke told me that as the two vehicles pulled into the Thriftway parking lot, that the Geo — or that the Saab continued to travel straight up towards the store, however, that the Geo did immediately pull off to the right. So *the two vehicles at that point had split off and Officer Sharke informed me that he continued up with his lights — his lights had been activated the entire time and he continued to follow up and pulled in behind the Saab which continued up towards the store.*" (Emphasis supplied.)

Radar's statements are evidence of the officer's subjective belief that an infraction occurred and it would be reasonable

to infer from that evidence that the officer based his decision to stop on petitioner's failure to yield to an emergency vehicle. There is no evidence in the record suggesting any other basis for the stop of the Saab. Thus, it is improper for the majority to disregard all of the statements offered by Radar as evidence of the stopping officer's belief that an infraction occurred and conclude that there was *no* evidence in the record to believe that any traffic infraction had occurred. Petitioner does not challenge the findings of the hearings officer that "[b]oth vehicles were failing to yield for the overhead lights of emergency vehicles." There is a basis in the record for that finding. Failing to respond to the signal of an emergency vehicle in the ways required by ORS 811.145 is a traffic infraction. The facts existing at the time of the stop, when viewed objectively, provided probable cause to believe that this traffic infraction had occurred, thus the stop was lawful.

Petitioner makes an alternative argument. He contends that he did not violate ORS 811.145 because the responses set out in the statute are only required of the car immediately in front of the emergency vehicle. ORS 811.145(1) provides:

"A person commits the offense of failure to yield to an emergency vehicle or ambulance if an ambulance or emergency vehicle that is using a visual or audible signal in a manner described under ORS 820.300 to 820.320 approaches the vehicle the person is operating and the person does not do all of the following:

"(a) Yield the right of way to the ambulance or emergency vehicle.

"(b) Immediately drive to a position as near as possible and parallel to the righthand edge or curb of the roadway clear of any intersection.

"(c) Stop and remain in such position until the emergency vehicle or ambulance has passed."

Petitioner concentrates on the word "approaches" in ORS 811.145 and argues that if the statute was applied as the hearings officer applied it, the statute would be "completely unclear" as to how many vehicles in a line must comply with the statute when an emergency vehicle "approaches" the last car in the line. Neither the word "approaches" nor its context in the statute so limit a motorist's obligation. An emergency

vehicle with lights and siren activated can approach other vehicles from many directions, including from the rear in the same lane of travel, or in the same direction in a parallel lane or in the opposite direction in an adjoining lane. An emergency vehicle entering an intersection could be approaching any vehicle on any of the four intersecting streets. The obvious purpose of the statute is to give emergency vehicles a relatively safe and clear path. It would be ridiculous to say that the requirements of the statute designed to meet that purpose apply only to the driver immediately in front of the emergency vehicle.

Implicit in petitioner's argument is that he did not violate the statute by failing to stop because the officers only had probable cause to stop the vehicle behind him. When an emergency vehicle approaches, ORS 811.145 requires an absolute response from the motorist approached on the roadway. That is neither the time nor place to litigate whether the emergency vehicle is traveling to a legitimate emergency or is trying to stop someone else, or whether the emergency vehicle operator has lawfully activated the lights and siren. The obligation is to give the emergency vehicle the right of way whatever the reason for the emergency signal.

In summary, I disagree with the majority's statement of the applicable analysis, and its conclusion that there is no evidence to support the hearings officer's findings or conclusions about the legitimacy of the stop. I also reject petitioner's alternative argument, which the majority does not address. The hearings officer did not err; I dissent.