Argued and submitted November 18, 1998, reversed and remanded February 24, petition for review denied June 8, 1999 (328 Or 666)

## STATE OF OREGON,
*Appellant,*

*v.*

## SCOTT MATHEW ARTHUR,
*Respondent.*

(Z420958; CA A100414)

976 P2d 1146

Cynthia A. Hicks, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Susan F. Drake, Deputy Public Defender, argued the cause for respondent. With her on the brief was David E. Groom, Public Defender.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

HASELTON, J.

De Muniz, P. J., dissenting.

## HASELTON, J.

The state appeals a pretrial order granting defendant's motion to suppress evidence. ORS 138.060(3). The state asserts that the trial court erroneously concluded that the underlying stop was unlawful because ORS 811.335 does not apply to cars making turns at stop signs or stop lights. We agree that the court misconstrued ORS 811.335 and, thus, reverse and remand.

On June 17, 1997, Portland Police Officer Kruger watched as defendant, driving a car, approached a controlled intersection. Defendant traveled well over 200 feet before signaling to make a right-hand turn approximately 10 feet from the stop sign. After stopping, defendant made the right-hand turn. Kruger then stopped defendant for making an unlawful or unsignaled turn in violation of ORS 811.335(1)(b). That statute provides:

"(1)   A person commits the offense of making an unlawful or unsignaled turn if the person is operating a vehicle upon a highway and the person turns the vehicle right or left when:

"* * * * *

"(b)   The person fails to give an appropriate signal continuously during not less than the last 100 feet traveled by the vehicle before turning." ORS 811.335(1)(b).

In the course of the ensuing traffic stop and investigation, ORS 810.410(3)(b), Kruger discovered that defendant's driver's license was suspended and, consequently, cited him for violating ORS 811.182.[1]

Before trial, defendant moved to suppress the evidence derived from the traffic stop. The trial court granted that motion, concluding that ORS 811.335(1)(b) does not

---

[1] ORS 811.182 provides, in part:

"(1) A person commits the offense of criminal driving while suspended or revoked if the person violates ORS 811.175 and the suspension or revocation is one described in this section, or if the hardship or probationary permit violated is based upon a suspension or revocation described in subsection (3) or (4) of this section."

apply to vehicles turning at stop signs and, thus, that Kruger lacked probable cause to make the stop:

> "I have to interpret that statute [ORS 811.335] as applying to signaling turns when there is lane change signal, or signaling at an intersection for a turn without stopping at a stop sign. I would not find a violation of the statute for someone pulling up to a stop sign and signaling for a reasonable period of time. Interpreting the statute that way—to allow a stop on probable cause for violation of the statute, then everything that flows from that, simply invites the use of that statute as a tool for a stop to do other police investigation * * * I have to suppress everything that flowed from the stop, including the identification request."

On appeal, the state argues that ORS 811.335(1)(b) unambiguously requires motorists, including those turning at stop signs, to signal continuously for the last 100 feet before making a turn. Thus, the state reasons, Kruger had probable cause to stop defendant.[2] We agree.

We look first to the text and context of ORS 811.335(1)(b). *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The text states that it is a violation to turn a vehicle to the right or left without signaling continuously for the last 100 feet before making the turn. *See State v. Bea*, 318 Or 220, 228, 864 P2d 854 (1993) (applying ORS 811.335 to motorist making "a change in the direction of travel from one street to another at the intersection of two or more streets"). The plain language of the statute does not provide an exception for motorists who are required to stop before turning. Nothing in the statute's context, including other provisions of the Motor Vehicle Code, qualifies that explicit directive. Indeed, although the vehicle code describes many circumstances in which motorists are legally required to stop before turning,[3] it makes no exception to the 100-foot signaling requirement in any of those circumstances.

---

[2] We note that the state does not have to prove that a violation occurred in order to establish probable cause. It is enough if the officer observed an action that she or he believed is illegal and that belief is objectively reasonable under the circumstances. *State v. Matthews*, 320 Or 398, 401-03, 884 P2d 1224 (1994).

[3] Examples of situations when motorists may be required to stop before turning include: traffic control devices, ORS 811.260; pedestrians in a crosswalk, ORS 811.010; bicycles, ORS 811.050 and ORS 811.055; oncoming traffic, ORS 811.275 and ORS 811.350; a flagger, ORS 811.232; and entering a roadway, ORS 811.505. In each case, the motorist must signal the turn in accordance with ORS 811.335.

Defendant and the dissent argue, nevertheless, that the statute should not apply because defendant was legally required to stop at a stop sign before making the turn. In that situation, according to defendant, no public safety purpose is served by requiring motorists to signal continuously for 100 feet. Whatever the *practical* merit of that position, we reiterate: The statute admits to no such exception. *See* ORS 174.010 (in construing statute, court is "not to insert what has been omitted, or to omit what has been inserted").

Defendant and the dissent also assert that, in some circumstances, a literal application of ORS 811.335(1)(b) may lead to absurd results and that, in fact, compliance with the statute may sometimes be impossible.[4] That may be true. But none of those circumstances was present here—defendant could have signaled for the last 100 feet before turning but failed to do so. When, and if, such circumstances arise, we can, and will, address them.

Because Kruger saw defendant signal only for the last 10 feet before stopping and turning, Kruger had probable cause for the traffic stop, and, thus, the evidence that defendant was driving while suspended was lawfully obtained. The trial court erred in granting defendant's motion to suppress.

Reversed and remanded.

**DE MUNIZ, P. J.,** dissenting.

I dissent. The majority acknowledges that defendant's argument has merit and that its interpretation of ORS 811.335 leads to at least one common situation where it is physically impossible to comply with the statute. 158 Or App at 627 n 4. Nonetheless, the majority concludes that the "plain language" of the statute requires the result it reaches. The majority does not, however, explain the "plain language" that it finds so clear. I conclude that, when the language of the statute is addressed under the analytic framework of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859

---

[4] For example, if there is less than 100 feet between the point a motorist enters a highway and where she or he turns, it may not be possible to comply with ORS 811.335(1)(b).

P2d 1143 (1993), the "plain" language shows that the trial court was correct in its interpretation.

ORS 811.335 provides:

"(1)   A person commits the offense of making an unlawful or unsignaled turn if the person is operating a vehicle upon a highway and the person turns the vehicle right or left when:

"(a)   The movement cannot be made with reasonable safety; or

"(b)   The person fails to give an appropriate signal continuously during not less than the last 100 feet traveled by the vehicle before turning."

"Continuously" generally means "stretching on without break or interruption." *Webster's Third New Int'l Dictionary*, 494 (unabridged ed 1993). Thus, the text of ORS 811.335(1)(b) connotes continuing movement. The uninterrupted signal required by the statute is to be given "during not less than the last 100 feet traveled * * * before turning." The text thus describes a signal given during an ongoing course of travel. The language of the text demonstrates a legislative intent that a driver provide adequate warning for a change in direction if the ongoing course of travel will be interrupted. *See State v. Bea*, 318 Or 220, 226, 864 P2d 854 (1993) ("turn" in ORS 811.335(1)(b) includes action that occurs when a vehicle changes its direction of travel and changes from one course of travel to another).

The context of ORS 811.335(1)(b) reinforces that interpretation. Subsection (a) covers situations other than the ongoing course of travel; there is no specific requirement of distance during which the signal must be given if the turn "cannot be made with reasonable safety[.]" Moreover, ORS 811.335(1)(b) states that a person commits the offense of making an unsignaled left or right turn if "[t]he person fails to give an appropriate signal[.]" ORS 811.395 describes the "appropriate signals" that are "required *while* stopping, turning, changing lanes or suddenly decelerating a vehicle." (Emphasis added.) "While" means "during the time[.]" *Webster's* at 2604. Reading ORS 811.335(1)(b) together with ORS 811.395, what is required is a signal indicating interruption

in the course of travel. I would hold that the trial court correctly concluded that ORS 811.335 does not apply when a stop sign indicates that interruption.[1]

---

[1] The signal required for a stop is either a hand signal or "[a]ctivation of brake lights on the vehicle." ORS 811.395(3).