Argued and submitted October 22, 2007, affirmed April 2, petition for review denied June 18, 2008 (344 Or 670)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JANA LEAH CHILSON,
*Defendant-Appellant.*

Clatsop County Circuit Court
057202; A131682

182 P3d 241

Kevin T. Lafky argued the cause and filed the brief for appellant.

Anna M. Joyce, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Deits, Judge pro tempore.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

After the trial court denied defendant's motion to suppress evidence, rejecting her argument that the evidence derived from an unlawful stop, she entered a conditional guilty plea to driving under the influence of intoxicants (DUII), ORS 813.010, reserving her right to appeal the denial of the motion. ORS 135.335(3). She renews her argument on appeal. In particular, she argues that, because it was impossible under the circumstances for her to comply with the statute that served as the basis of the stop, the statute could not be applied against her, and the stop was therefore unlawful. We reject that argument and affirm.

The relevant facts are uncontested. Seaside City Police Officer Cook saw defendant pull out of a restaurant parking lot and turn left onto a street (Avenue F) heading westbound. Defendant continued in that direction as she approached the intersection of Avenue F and Roosevelt Drive. The distance between the restaurant parking lot exit and the intersection was less than 100 feet. Defendant did not activate her turn signal until after she stopped at the intersection, at which point she signaled to turn right and began to do so. Before completing the turn, however, she noticed oncoming traffic and reversed direction for a short distance, returning to Avenue F. She then activated her *left* turn signal and turned *right*.

Although he observed all of that driving activity, the officer (according to his own testimony) decided to stop defendant based solely on his belief that her first turn from Avenue F was a violation of ORS 811.335(1), which provides, in part:

> "A person commits the offense of making an unlawful or unsignaled turn if the person is operating a vehicle upon a highway and the person turns the vehicle right or left when:
>
> "* * * * *
>
> "(b)   The person fails to give an appropriate signal continuously during not less than the last 100 feet traveled by the vehicle before turning."

After stopping defendant, the officer determined that she was intoxicated and arrested her for DUII.

Defendant filed a pretrial motion to suppress evidence obtained by the officer after the assertedly unlawful traffic stop. She acknowledged that she did not activate her signal at a point that was 100 feet or more from the intersection, but she contended that her noncompliance with the statute could not possibly be unlawful—in effect, that she was exempt from enforcement of the statute—because, given the distance between the parking lot exit and the intersection, compliance was impossible. The trial court rejected that argument.

On appeal, as she did at trial, defendant reasons as follows: To comply with the Oregon Constitution, an officer who stops a person for a traffic infraction must have probable cause to believe that the person has committed the infraction. Probable cause has two components: the officer must subjectively believe that the violation has occurred, and that belief must be objectively reasonable. *State v. Matthews*, 320 Or 398, 403, 884 P2d 1224 (1994). Although the officer here had the necessary subjective belief, it was not (according to defendant) objectively reasonable; defendant's act was not an infraction because no law can require a person to perform an impossible act. Thus, the stop was not lawful, and all of the evidence of defendant's intoxication must be suppressed because it derived from that unlawful stop.

■ In response, the state maintains that, under *Matthews*, an officer's subjective belief that an infraction has occurred can be—and, in this case, was—objectively reasonable, even if no infraction actually occurred. *Id.* at 401, 404. As has the Supreme Court in *Matthews*, we have recognized that an "officer's belief may be objectively reasonable even if it turns out to be incorrect." *State v. Tiffin*, 202 Or App 199, 203, 121 P3d 9 (2005). However, "an officer's subjective belief that a traffic infraction occurred is objectively reasonable if, and only if, the facts as the officer perceived them actually satisfy the elements of a traffic infraction." *Id.* at 204. In other words, probable cause may be based on a mistake of fact, but not a mistake of law. *Id.*; *see also State v. Hart*, 85 Or App 174, 176-77, 735 P2d 1283 (1987) (no probable cause where officer incorrectly believed that a vehicle had committed a traffic offense by turning at a malfunctioning traffic signal). If, as defendant argues, the facts as the officer perceived

them did not "satisfy the elements of a traffic infraction," his subjective belief that they did was not objectively reasonable. However, as we explain below, the facts as the officer perceived them *did* "satisfy the elements" of ORS 811.335(1)(b).

If this were a jurisdiction where we could construe a statute so as to avoid the plainly absurd results of a literal interpretation that the legislature could not possibly have intended—that is, every other jurisdiction in the United States—the outcome of this case would be a simple and straightforward affirmance. A literal reading of ORS 811.335(1)(b) leads to absurd results. For example, a person whose driveway enters a one-way street that ends at a "T" intersection 50 feet away would be unable lawfully to leave home by automobile. That observation would compel the conclusion that the legislature obviously intended the statute to mean that a person must signal not less than 100 feet before turning *unless the person enters the roadway at a point less than 100 feet before an intersection, in which case the person must activate the signal as soon as the person enters the roadway.* Under that common-sense interpretation of ORS 811.335(1)(b), the officer's belief would have been objectively correct (because defendant did not start to signal until she actually reached the intersection), the stop would have been lawful, and the motion properly would have been denied.

Not here. The legislature and the Supreme Court have foreclosed that option. ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, * * * not to insert what has been omitted[.]"); *State v. Vasquez-Rubio*, 323 Or 275, 282, 917 P2d 494 (1996) ("absurd result" maxim inapplicable when text of statute is unambiguous); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (maxims of construction inapplicable when text of statute is unambiguous). Indeed, in *State v. Bea*, 318 Or 220, 226, 864 P2d 854 (1993), the Supreme Court rejected a common-sense interpretation of the language of the statute at issue in this case and held that the statute required a motorist to signal for a left turn even at an L-shaped intersection where turning left was the only option. *See also State v. Arthur*, 158 Or App 623, 626, 976 P2d 1146, *rev den*, 328 Or 666 (1999) (holding that ORS

811.335(1)(b) is unambiguous and must be interpreted without inserting what the legislature has omitted).

■ Although we do not reach the conclusion that the stop was lawful by way of a common-sense reading of the statute, we reach that conclusion by another route—one that adheres to the literal (albeit potentially absurd) meaning of ORS 811.335(1)(b). Under that reading of the statute, defendant committed the infraction because she "fail[ed] to give an appropriate signal continuously during not less than the last 100 feet traveled by the vehicle before turning." Defendant concedes as much. She argues, however, that she was exempt from the statute because compliance with it was not possible. For the proposition that one cannot be convicted for failing to perform an act that cannot be performed, she cites only *Arthur*. In that case, however, we simply acknowledged that "in some circumstances, * * * compliance with the statute may sometimes be impossible." 158 Or App at 627. In a footnote, we observed, "For example, if there is less than 100 feet between the point a motorist enters a highway and where she or he turns, it may not be possible to comply with ORS 811.335(1)(b)." *Id.* at 627 n 4. We then announced that, "[w]hen, and if, such circumstances arise, we can, and will, address them." *Id.* at 627.

■ The "circumstances" requiring us to determine whether the statute can be enforced when compliance is impossible do not "arise" in this case either. Even if we were to conclude that such an exemption exists, that conclusion would not help defendant. In determining whether a stop is justified, we focus on whether the facts that the officer perceived establish probable cause to believe that an offense has occurred—that is, whether the elements of an offense are present. *Tiffin*, 202 Or App at 204. The potential existence of a defense or exemption is not relevant. In *State v. Bourget-Goddard*, 164 Or App 573, 575, 993 P2d 814 (1999), *rev den*, 330 Or 331 (2000), for example, officers stopped the defendant because they saw that he was not wearing a seat belt. The defendant argued that the stop was unlawful because the seat-belt law contained several exemptions, and the officers did not have probable cause to believe that the exemptions did not apply. We rejected that argument. We explained:

"In determining whether probable cause exists to support a stop, we look to the record as to the elements of the offense itself. Officers are not required to eliminate all possible lawful explanations for conduct that reasonably appears to violate the law. * * * Nor is the state required to eliminate the possible applicability of defenses or statutory exemptions that do not describe a necessary element of the offense itself. *See State v. Vasquez-Rubio*, 323 Or 275, 278-79, 917 P2d 494 (1996) (state does not have the burden to prove exceptions that are not descriptive of an offense); *State v. Merrill*, 135 Or App 408, 414 n 5, 899 P2d 712 (1995), *rev dismissed*, 323 Or 73, 912 P2d 373 (1996) ('The burden of proof of any exemption or exception is upon the person claiming it.'); *State v. Wadekamper*, 68 Or App 750, 754, 683 P2d 168 (1984) (state is not required to negate statutory exemptions in charging instrument).

"In this case, [the seat-belt statute] sets out the elements of the offense of failure to wear a seat belt. A separate statute * * * provides exemptions to that offense. Nothing in the language of either statute suggests that the exemptions are descriptive of an element of the offense itself."

*Bourget-Goddard*, 164 Or App at 578.

Likewise, in the present case, ORS 811.335(1)(b) sets out the elements of making an unsignaled turn: (1) operation of a motor vehicle, (2) upon a highway, and (3) turning without appropriately signaling continuously during not less than the last 100 feet traveled before turning. If there is an exemption for motorists for whom compliance is impossible because they entered the highway less than 100 feet before the turn, that exemption is not "descriptive of an element of the offense itself." *Bourget-Goddard*, 164 Or App at 578. Thus, the state need not disprove it in order to establish that the officer had probable cause; establishing the officer's probable cause to believe that the elements were present sufficed.

If defendant had been cited and tried for failing to appropriately signal, it is at least arguable that the state would have had the burden of disproving a properly pleaded "impossibility" exemption or defense. *See* ORS 161.055 (state's burden to disprove most defenses). However, for purposes of determining whether the officer had *probable cause*

to believe that defendant had violated ORS 811.335(1)(b), it suffices that he had a reasonable belief that the elements of the offense were present. The stop, therefore, was lawful, and the court did not err in denying defendant's motion to suppress.

Affirmed.