Submitted May 30, 2012, reversed and remanded April 24, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KYLE NELS PETTERSEN,
*Defendant-Appellant.*

Deschutes County Circuit Court
MI083223; A146379

300 P3d 277

Peter Gartlan, Chief Defender, and Alice Newlin-Cushing, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Leigh A. Salmon, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Brewer, Judge pro tempore.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010. He assigns error to the trial court's denial of his motion to suppress evidence obtained after a police officer—having initially stopped defendant for a traffic violation with probable cause—continued his investigation of that violation notwithstanding the appearance of new information, which, defendant asserts, vitiated probable cause such that the officer was required to cease his investigation. For the reasons set forth below, we agree with defendant that probable cause dissipated when the officer obtained that new information. Specifically, we conclude that, upon viewing the information, the officer no longer subjectively believed that defendant had more likely than not committed a violation. Accordingly, we reverse and remand.

We review a trial court's denial of a motion to suppress for legal error and defer to its findings of fact, both explicit and implicit, provided that there is sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993); *see also Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968) (where there is evidence from which the facts could be decided in more than one way, we presume that the trial court decided the facts in a manner consistent with its ultimate conclusion). On November 17, 2008, Bend Police Officer Gault, while on routine patrol duty, was unable to view the registration tags on defendant's vehicle as he drove behind it. Gault called dispatch to inquire as to the validity of defendant's registration and, based on the Department of Motor Vehicles (DMV) records available to dispatch, was informed that defendant's registration had expired approximately one month previously. Based on that information, Gault stopped defendant for violation of, *inter alia*, ORS 803.300 (failure to register a vehicle).

However, when Gault walked up behind defendant's vehicle, he observed—contrary to the information from the DMV—facially valid, current registration tags on defendant's license plate. Registration tags depict the numeric month of their issuance and expiration. Gault testified that, "[a]s [he got] right to the trunk[, he] could see that *** they d[id]

look like they [we]re current registration tags." Notably, "there is a delay in the record keeping of the [DMV,]" and Gault testified that he was aware of that fact—going so far as to note that he had experienced one or more issues with DMV "error" or delay in the past where "[the] DMV just had not changed the status, the registration status in the computer system." Nevertheless, despite his observation of the facially valid and recently issued tags and knowledge of the DMV records' potential inaccuracy, Gault proceeded to "investigate and *make sure* the vehicle was registered" by approaching defendant and requesting that he produce his driver's license, proof of insurance, and vehicle registration form.[1] (Emphasis added.) Specifically, Gault testified:

> "[THE STATE]: Now when you approached [defendant] did you—after you saw that the license plates appeared to be valid what was your reason for continuing on to go speak to the Defendant at that time?

> "[GAULT]: Well, if I get a return from dispatch saying that the plates are expired, just through training and experience *it has been known that people have* stolen tags or altered the tags on the vehicle. So it is just out of—as far as my standpoint on that it was—*I felt it was my duty to investigate and make sure the vehicle was registered.*"

(Emphases added.)

Upon asking defendant for the registration form and other documents, Gault noticed that defendant "had very slow movements" in retrieving them along with "bloodshot, watery eyes." Specifically, Gault testified that, "[a]s [defendant] reached over to look for his proof of insurance of his vehicle he—he opened up the glove compartment, grabbed a whole wad of paper. Which is not untypical, but it was very, very slow movements, very robotic, slow." Based upon those observations, Gault developed probable cause that defendant was driving while intoxicated and arrested him for that offense.

Defendant was charged with one count of DUII and subsequently filed a motion to suppress "all evidence obtained by the police as a result of the stop of [his] vehicle"

---

[1] Gault testified that, because it was approximately midnight, he could not have made further inquiries with the DMV at that time.

under Article I, section 9, of the Oregon Constitution. Specifically, defendant argued that probable cause dissipated once Gault saw the valid registration tags on defendant's license plate before interviewing him. In advancing that argument, defendant noted that "[Gault] didn't testify that he believed the tags were expired" and that "[t]here is no testimony that [Gault] subjectively believed that there wasn't a valid reason [for the discrepancy between the DMV records and the tags], just that [Gault] thought it was his duty to investigate it further because there was *a possibility* [that the registration] * * * could [have been] invalid." (Emphasis added.) Accordingly, defendant argued, at no point after viewing the facially valid tags did Gault hold either a subjective or objectively reasonable belief that defendant had more likely than not committed a violation as required to meet the legal standard for probable cause.

The state countered by focusing on alternative explanations for the discrepancy, arguing that probable cause did not dissipate when Gault saw the facially valid registration tags because "there [were] a number of different reasons as to why those valid registration stickers could be on the license plate—some of them valid, some of them invalid. But the only way for [Gault] to further investigate and determine the reason for that discrepancy would * * * be by making contact with the Defendant." Although the trial court expressly questioned the state's theory during closing arguments, it ultimately denied defendant's motion—emphasizing the nature of the information from dispatch in reasoning that Gault "[had] a right to rely upon the official [DMV] records"—that is, that Gault "had a right to give weight—greater weight, if you will, to [the] official [DMV] records, to the public records."

On appeal, defendant reprises his argument that Gault neither subjectively nor reasonably believed, after observing the facially valid registration stickers, that defendant had *more likely than not* committed a violation. Accordingly, defendant argues, probable cause to support the stop dissipated with that observation, and any evidence obtained during the continuation of that stop must be suppressed under Article I, section 9, as the product of an unlawful extension of the stop. The state counters, relying on *State*

*v. Vantress*, 195 Or App 52, 96 P3d 867 (2004) (officer not required to accept suspect's innocent explanation for seemingly unlawful conduct), and *State v. Codr*, 99 Or App 417, 782 P2d 442 (1989) (similar), that Gault "was not required to accept the seemingly innocent explanation that [the] DMV's records were inaccurate or out of date." Consequently, the state argues, Gault was not required to draw the inference most favorable to defendant—that the DMV's records were "inaccurate or out of date"—and thus Gault was entitled "to complete his investigation by inspecting the registration card itself." Thus, the state focuses on whether or not Gault *reasonably* believed that defendant had more likely than not committed a violation—failing to address evidence in the record establishing that Gault did not *subjectively* believe that defendant had more likely than not committed a violation.

The state's argument is inapposite. Based on this record, there is no evidence from which a reasonable factfinder could conclude that, upon viewing the facially valid registration tags, Gault subjectively believed that defendant had more likely than not committed a violation. Probable cause therefore dissipated at that point, and Gault unlawfully extended the stop. In turn, because Gault had no reason to interact with defendant beyond simple, brief formalities in informing him that he was free to leave, we conclude that Gault's observations resulting from that unlawful extension of the stop and associated investigation should have been suppressed.

"In order to stop and detain a person for a traffic violation, an officer must have probable cause to believe that the person committed a violation." *State v. Boatright*, 222 Or App 406, 409, 193 P3d 78, *rev den*, 345 Or 503 (2008) (citing ORS 810.410; *State v. Matthews*, 320 Or 398, 403, 884 P2d 1224 (1994)). In order to have probable cause, the officer "must subjectively believe that a violation occurred and * * * the officer's belief must be objectively reasonable." *Id.* (citing *State v. Miller*, 345 Or 176, 186, 191 P3d 651 (2008)). Further, "[p]robable cause exists when a law enforcement officer reasonably believes that, *more likely than not*, the suspect has committed an offense." *State v. Berringer*, 234 Or App 665, 669, 229 P3d 615, *rev den*, 348 Or 669 (2010)

(citation omitted; emphasis added). Finally, this court has repeatedly affirmed the principle that "[a] stop that begins lawfully can become unlawful when the reason for the stop has dissipated." *Id*. (citations and internal quotation marks omitted); *see, e.g., State v. Farley*, 308 Or 91, 94, 775 P2d 835 (1989) (holding that, after an officer lawfully stopped the defendant for operating a vehicle without license plates, "[u]pon seeing [a valid] temporary permit, the justification of any investigation was vitiated" and "the officer had no statutory authority to proceed further").

Here, the unambiguous evidence demonstrates that Gault, upon observing the facially valid registration tags, did not subjectively believe that defendant had more likely than not committed a violation. Accordingly, probable cause dissipated at the time of that observation, and Gault was then required to cease his investigation and terminate the stop. Above all, Gault's testimony establishes that, upon observing the facially valid tags, he merely believed that it was *possible* that defendant had committed a violation. He relied on his training and experience in acknowledging that "it has been known" that people steal or alter registration tags and therefore felt that it was his "duty to investigate and *make sure* the vehicle was registered." (Emphasis added.) That testimony clearly establishes that Gault did not have probable cause after he saw the facially valid registration tags. Put simply, a belief that it is *possible* that a person committed a violation does not amount to probable cause, and that is precisely the case here. *See State v. Stearns*, 196 Or App 272, 275, 101 P3d 811 (2004) (an officer must "subjectively believe[ ] that the infraction occurred" in order for probable cause to exist in the context of a traffic stop); *see also State v. Rayburn*, 246 Or App 486, 490, 266 P3d 156 (2011), *rev den*, 351 Or 675 (2012) (confirming the "more likely than not" component of probable cause).

For the reasons set forth above, we conclude that Gault's probable cause to believe that defendant committed a violation dissipated when he saw the facially valid registration tags on defendant's vehicle. His subsequent investigation therefore constituted an unlawful extension of the stop. Evidence obtained as a product of an unlawful stop is subject to suppression under Article I, section 9. *See State v.*

*Rodgers/Kirkeby*, 347 Or 610, 623-24, 227 P3d 695 (2010). Accordingly, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.