Argued and submitted April 26, affirmed June 12, 2002

## STATE OF OREGON,
### *Respondent,*

*v.*

## BRIAN ZANE ISLEY,
### *Appellant.*

## 9906144CV1; A109893

48 P3d 179

Stephanie Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Oregon Public Defender.

Stacey RJ Guise, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

### HASELTON, P. J.

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants, ORS 813.010, and violation of the open container law, ORS 811.170. Defendant assigns error to the trial court's denial of his motion to suppress evidence, arguing that the underlying stop for a traffic violation was unsupported by probable cause. In particular, defendant asserts that, because the arresting officer's own conduct caused defendant to swerve outside his lane, the officer lacked probable cause to stop him for failing to drive within his lane. We conclude that the stop was supported by probable cause, and affirm.

On the evening of February 13, 1999, Oregon State Police Trooper Aydelotte was completing a stop on Highway 26 in Grant County when he was passed by a pickup truck, driven by defendant, traveling westbound. Although he noticed nothing remarkable at that time, Aydelotte got into his car, caught up with defendant, and observed defendant twice drive onto the center line and once onto the fog line. Based on that conduct, Aydelotte determined to stop defendant for failing to drive within his lane. ORS 811.370.[1]

Before Aydelotte activated his lights or siren, defendant pulled over to the side of the road unprompted. Aydelotte then pulled in behind defendant and activated his red, blue, amber, and "wig-wag" lights. When Aydelotte approached defendant, defendant told him that his lights were very bright. Aydelotte noticed that defendant had bloodshot eyes and slurred speech, appeared confused, and had difficulty producing his license and registration. Aydelotte also saw several open beer cans in defendant's

---

[1] ORS 811.370 provides:

"(1) A person commits the offense of failure to drive within a lane if the person is operating a vehicle upon a roadway that is divided into two or more clearly marked lanes for traffic and the driver does not:

"(a) Operate the vehicle as nearly as practicable entirely within a single lane; and

"(b) Refrain from moving from that lane until the driver has first made certain that the movement can be made with safety.

"(2) The offense described in this section, failure to drive within a lane, is a Class B traffic violation."

pickup, at least one of which still contained beer. Defendant agreed to take field sobriety tests, had difficulty with his balance and following instructions, and made numerous mistakes. Aydelotte then arrested defendant for driving under the influence of intoxicants. A subsequent search of the pickup yielded an open whiskey bottle. Later, at the county jail, defendant consented to a breath test, and that test indicated that defendant had a blood alcohol content of 0.21.

Before trial, defendant moved to suppress all evidence obtained following the stop of his pickup. At the suppression hearing, defendant testified that, while Aydelotte was driving behind him, Aydelotte had bright, overhead lights ("takedown" lights) on that impaired his ability to see.[2] Conversely, Aydelotte testified that he did not use his takedown lights during the period preceding his stop of defendant. Based on defendant's account, defense counsel argued that the underlying stop was unsupported by probable cause because the bright lights on Aydelotte's cruiser had impaired defendant's vision, causing him to drive outside of his lane:

> "Now if an officer is going to create a circumstance in a very short period of time where the driving is somewhat less than perfect, I don't think that's probable cause to believe that you are literally failing to drive within your lane as nearly as practicable. That's the standard."

Ultimately, the trial court did not resolve the parties' factual dispute. Instead, the court concluded that, even assuming that Aydelotte's takedown lights were on, that circumstance might, at most, provide a defense to the infraction—but would not vitiate probable cause:

> "Now I must tell you this is a unique argument, that the police officer caused the traffic infraction, and therefore it shouldn't be used as a basis for a stop. * * * But I don't think that's the issue. I think the issue is was there probable cause to stop for the infraction. And again there may or may not be a defense to the infraction itself. But on this record I think clearly there was at least probable cause to stop for the infraction, because the unrebutted testimony is that

---

[2] Adelyotte indicated that his vehicle had "takedown" lights, and described them as bright white lights, located at the center of the light bar atop his cruiser.

[defendant] crossed the center line twice and the fog line once.

"Again, I'm not speaking to whether there may be a defense to the traffic infraction based on something caused by the officer. I don't even have to get that far, I just—there was probable cause to stop because the infraction occurred or there was probable cause to believe that an infraction had occurred within this officer's presence, so there was a basis to stop."

Accordingly, the court denied defendant's motion to suppress. Following a stipulated facts trial, the court convicted defendant of driving under the influence of intoxicants, ORS 813.010, and violating the open container law, ORS 811.170.

On appeal, defendant reprises his argument that the stop was unsupported by probable cause because Aydelotte's conduct caused his erratic driving. In particular, defendant points to *State v. Price*, 92 Or App 669, 673, 759 P2d 1130 (1988), and *State v. Roberts*, 75 Or App 292, 296, 706 P2d 564 (1985), and argues that, just as the police cannot create exigent circumstances justifying a warrantless search, so too they should be precluded from using conduct caused by police action to establish probable cause.

The state responds that defendant's argument improperly conflates, and confuses, a defense of justification with a lack of probable cause. We agree.

■ ■ To stop and detain a person lawfully for a traffic infraction, an officer must have probable cause to believe that an infraction has been committed. *State v. Matthews*, 320 Or 398, 403, 884 P2d 1224 (1994). Probable cause exists if, at the time of the stop, the officer subjectively believes that the infraction occurred and if that belief is objectively reasonable under the circumstances. *Id.*; *State v. Bourget-Goddard*, 164 Or App 573, 577-79, 993 P2d 814 (1999), *rev den* 330 Or 331 (2000). It is irrelevant whether the officer's belief is actually correct. Rather, the standard is simply whether there is "probable cause to believe that a traffic offense occurred." *Id.* at 577; *see also State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986) (assessment of objective probable cause requires consideration of, *inter alia*, the underlying facts of which the officer was cognizant).

■ Here, it is uncontested that Aydelotte observed defendant's car twice travel onto the center line and once onto the fog line. Defendant does not dispute that that conduct, viewed in the abstract, was sufficient to establish probable cause. Nor does defendant dispute that, as a factual matter, Aydelotte subjectively believed that defendant had committed a traffic infraction.[3] Rather, defendant's only argument appears to be that, as a matter of law, a determination of objective probable cause cannot be based on conduct arising as a consequence of an officer's own action.

That argument is unavailing. As the state correctly observes:

"Defendant's argument that he only swerved his car because he was blinded by the officer's white takedown lights is essentially a claim that he has a defense to the infraction, *i.e.*, that he did not actually commit the infraction of failure to drive within a lane because he was blinded by the officer's lights. The fact that some lawful explanation for defendant's erratic driving might have existed, however, does not change the relevant probable cause inquiry. As this court stated in *Bourget-Goddard*, [164 Or App at 578,] an officer is 'not required to eliminate all possible lawful explanations for conduct that reasonably appears to violate the law.' If the officer observed an action that he believed was an infraction and that belief is objectively reasonable, that is enough."

A hypothetical, posed at oral argument, is illustrative: Assume that X is driving on a highway, following a police car driven by Officer A. A's car is losing oil, causing X's car to swerve and slide repeatedly out of its lane. Officer B, who is behind X and sees the apparently erratic driving but does not know about the oil, stops X for violating ORS 811.370. Under defendant's proposed analysis, B would lack probable cause, even though the circumstances known to B manifested a violation of ORS 811.370. We reject that result: Although X may point to the oil as a matter of substantive justification and defense to the underlying charges, the fact

---

[3] In particular, defendant does not contend that Aydelotte intentionally used his bright lights in such a way as to cause defendant to violate ORS 811.370 or that, at the time he initiated the stop, Aydelotte subjectively believed that the takedown lights had caused defendant's violation of ORS 811.370.

that it dripped from a police car would not preclude a determination of probable cause.[4]

Defendant's effort to analogize this case to our cases holding that officers cannot "create their own exigency" is similarly unavailing. Neither *Price* nor *Roberts* turned on whether the warrantless searches were supported by probable cause. Instead, the issue in those cases was whether, putting aside the issue of probable cause, there were exigent circumstances sufficient to avoid the warrant requirement. *See Price*, 92 Or App at 673; *Roberts*, 75 Or App at 295-96. Thus, the issue in those cases differed materially from the one presented here. We note, moreover, that the precept against "creating" an exigency generally applies to instances in which officers engage in a " 'deliberate scheme to evade the [warrant] requirement.' " *See State v. Kosta*, 304 Or 549, 556, 748 P2d 72 (1987) (quoting Wayne R. LaFave, 3 *Search and Seizure* § 7.5(e), 143 (2d ed 1987)). As noted, 182 Or App at 191 n 3, there is no evidence that Aydelotte engaged in such calculated conduct here to cause defendant to violate the law.

The trial court correctly determined that the underlying stop was supported by probable cause.

Affirmed.

---

[4] As noted, 182 Or App at 191 n 3, this case did not involve purposeful conduct by the arresting officer calculated to cause a traffic violation. Nor is this a case in which the officer knew that his or her own noncalculated conduct caused or justified the ostensible violation. Accordingly, we have no occasion to consider what effect, if any, either of those circumstances might properly be given in assessing objective or subjective probable cause.