Argued and submitted May 28, affirmed October 1, petition for review denied
December 24, 2008 (345 Or 503)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RONALD LEE BOATRIGHT,
*Defendant-Appellant.*

Multnomah County Circuit Court
050444048; A132643

193 P3d 78

Zachary L. Mazer, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Legal Services Division.

Tiffany Keast, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Chief Judge, and Ortega, Judge, and Carson, Senior Judge.

BREWER, C. J.

## BREWER, C. J.

Defendant appeals a conviction for driving under the influence of intoxicants (DUII), arguing only that the police officer did not have probable cause to stop him for a traffic offense. We conclude that the officer had probable cause to stop defendant for a violation of ORS 803.550 (2005),[1] illegal alteration or display of a registration plate, and therefore affirm the conviction.

The facts that are relevant to our disposition are undisputed. When Officer Sweeney pulled up behind defendant's pickup truck at a stop sign at 10:30 p.m. on March 21, 2005, he noticed that the design of the truck's rear bumper partially obscured the registration stickers on the truck's license plate. When defendant pulled away from the stop sign, his truck lurched and appeared to stall, causing an oncoming vehicle to slow down to avoid a collision. Sweeney followed defendant for a short distance and then stopped him; he believed that he had probable cause to do so both for illegal display of a registration plate and for impeding traffic. ORS 811.130.[2] During the stop, Sweeney obtained the evidence that led to defendant's arrest and conviction for DUII.

Because it is fundamental to our decision, we describe the location of the rear license plate on defendant's pickup in some detail. The left and right portions of the rear bumper of the pickup ran directly below the bottom of the pickup's tailgate and protruded several inches from it. An indentation in the center of the bumper extended back to approximately the vertical plane of the tailgate in order to create a place for installing the license plate. A horizontal steel plate continued along the bottom of the indentation,

---

[1] The 2007 legislature amended ORS 803.550 in several respects; the amendments became effective on January 1, 2008. Or Laws 2007, ch 192, § 1. Because the events in this case occurred before that date, we refer to and quote the version of ORS 803.550 in effect at the time of the stop.

[2] The trial court concluded that Sweeney did not have an objectively reasonable belief that defendant had violated ORS 811.130. The state challenges that ruling on appeal but does not cross-assign error to it. ORAP 5.57. Because of our conclusion that Sweeney had probable cause to stop defendant for a violation of ORS 803.550, we need not discuss that issue. For the same reason, we do not consider the state's argument, which it raises for the first time on appeal, that defendant violated ORS 803.560, improper display of validating stickers.

connecting the left and right portions of the bumper. That horizontal plate, however, stopped before it reached the rear of the indentation, thereby leaving an empty slot directly at the back of the indentation. The screw holes for attaching the license plate were designed so that the lowest portion of the license plate fit into that slot, with the result that the horizontal portion of the bumper obscured the bottommost portion of the license plate.

The bumper was thus designed so that, when the license plate was installed as intended, a person looking at the license plate from a following car could not see the entire plate. It was possible to see the plate number without any obstruction. However, the horizontal portion of the bumper partially obscured the registration stickers on the bottom of the license plate that showed the month and year that the registration expired. The color of the sticker for the month, which was in the bottom left corner of the plate, was clearly visible, as was the top of the number "10," standing for October. The color of the sticker for the year, which was in the bottom right corner, was also visible, but it was impossible to see any part of the number, in this case "2006." It was possible to see the entire license plate, including the registration stickers, only when one was standing almost directly above the bumper and looking down into the slot. The question on appeal is whether that display of the license plate gave Sweeney the authority to stop defendant for a violation of ORS 803.550.

■■ In order to stop and detain a person for a traffic violation, an officer must have probable cause to believe that the person committed a violation. ORS 810.410; *State v. Matthews*, 320 Or 398, 403, 884 P2d 1224 (1994). That means that the officer must subjectively believe that an violation occurred and that the officer's belief must be objectively reasonable. *State v. Miller*, 345 Or 176, 186, 191 P3d 651 (2008).

"For the purposes of the subjective component of the probable cause inquiry, it is sufficient if the trial court finds (and there is evidence to support its findings) that the officer reasonably believed that he had lawful authority to act, even if the officer's subjective basis for acting turns out to be incorrect. Of course, in order to prove a valid arrest, the

state also must establish, in addition to the officer's subjective belief that he or she had lawful authority to act, that the facts objectively are sufficient to establish probable cause."

*Id.*

As the court reinforced in *Miller*, an "officer's belief may be objectively reasonable even if it turns out to be incorrect." *State v. Tiffin*, 202 Or App 199, 203, 121 P3d 9 (2005). Thus, probable cause may be based on a mistake of fact. *Id.* Moreover, probable cause may be based on a mistake as to *which* law the defendant violated. *Miller*, 345 Or at 186; *State v. Cloman*, 254 Or 1, 12, 456 P2d 67 (1969). Nevertheless, in order to satisfy the objective component, the facts that the officer perceives to exist must establish the elements of *an* offense, even if not the offense that the officer believed the defendant committed. *State v. Chilson*, 219 Or App 136, 139-40, 182 P3d 241, *rev den*, 344 Or 670 (2008); *Tiffin*, 202 Or App at 204. Finally, although the facts as perceived by the officer must constitute the elements of an offense, in order to satisfy the objective component, an officer need not eliminate the possibility that a defense or exception to the offense applies. *State v. Isley*, 182 Or App 186, 190-92, 48 P3d 179 (2002); *State v. Bourget-Goddard*, 164 Or App 573, 578, 993 P2d 814 (1999), *rev den*, 330 Or 331 (2000).

The question on appeal is whether Sweeney's subjective belief that he had probable cause to believe that defendant violated ORS 803.550 when he drove his pickup with the rear license plate installed as we have described was objectively reasonable. At the time of the stop the relevant portions of that statute provided:

"(1) A person commits the offense of illegal alteration or display of a registration plate if the person knowingly does any of the following:

"(a) Illegally alters a registration plate in a manner described in subsection (2) of this section.

"(b) Operates any vehicle that is displaying a registration plate that is illegally altered in a manner described in subsection (2) of this section.

"\* \* \* \* \*

"(2) A registration plate is illegally altered for purposes of this section if the plate has been altered, modified, covered or obscured including, but not limited to the following:

"* * * * *

"(b) Any material or covering, other than a frame or plate holder, placed on, over or in front of the plate that alters the appearance of the plate.

"(c) Any frame or plate holder that obscures the numbers, letters or registration stickers, so as to render them unreadable."

The effect of the design of the bumper on defendant's pickup was to obscure the registration sticker that showed the year of expiration of the license plate when the plate was viewed from the position in which another motorist would view it.[3] Under ORS 803.550(2), the specific descriptions of altering, modifying, covering, or obscuring a license plate in the rest of the subsection are nonexclusive examples. ORS 803.550(2)(c) provides that a registration plate is illegally altered if the frame or plate holder obscures the registration stickers. We need not decide whether the bumper was itself a frame or plate holder. If the bumper is a plate holder, its design obscured the year sticker and thus expressly violated ORS 803.550(2)(c). If the bumper was not a plate holder, it obscured the sticker in the same way that a plate holder would and thereby came within the more general prohibition of ORS 803.550(2). Based on the text of the statute alone, Sweeney's subjective belief that defendant had violated the statute was objectively reasonable.

Defendant raises a number of arguments that challenge that conclusion. He first suggests that the problem arises from the bumper manufacturer's inadequate design, not from anything that defendant did. Assuming that that argument relates to whether defendant knowingly violated ORS 803.550, it is irrelevant to whether Sweeney had probable cause to believe that defendant had violated the statute.

---

[3] Because the top portion of the "10" on the sticker that showed the month of expiration remained visible, we will assume that the bumper did not obscure that sticker in a way that made it unreadable.

In *Isley*, the defendant argued that he had committed the infraction at issue because the officer's bright lights had blinded him; we held that that potential defense did not affect whether there was probable cause for a stop. 182 Or App at 191. In the same way, Sweeney did not need to determine who was responsible for obscuring the sticker; what matters for probable cause was the fact that the sticker was obscured.

Defendant next argues that the legislature was concerned only with plates that are obscured by a frame or plate holder, not plates that are obscured by something else. That argument ignores the "not limited to" wording of ORS 803.550(2), which makes it clear that the statutory examples are not the exclusive methods of violating the statute. Defendant's final argument, that the registration sticker was not obscured because Sweeney could tell the year from the color of the sticker, ignores that the statute contemplates the officer being able to "read" numbers on the sticker. *See* ORS 803.550(2)(c).

Defendant next turns to the legislative history of ORS 803.550 to support his arguments. Defendant has presented that legislative history to us and, under ORS 174.020, we may consider it to the extent that we find it to be appropriate. Assuming, without deciding, that it would be appropriate to consider legislative history when the statutory text is unambiguous, we do not discuss the legislative history in detail but, instead, focus on the conclusions that defendant would draw from it:

> "(1) [T]he legislature only intended to capture *intentional* alterations to the registration plate; (2) as it regards 'frame or plate holder,' the legislature did not have 'bumper' in mind; and (3) the legislature was primarily concerned with intentional acts that altered or obscured the identification numbers and letters, not the registration stickers."

(Emphasis in original.)

Even if we were to agree with defendant that the legislative history supports those conclusions, it would not benefit him. First, as the state points out, the legislature expressly prohibited "knowingly" altering a license plate, and

"knowingly" has a definition that is distinct from "intentionally." ORS 161.085(7), (8). The legislative history cannot alter the precisely defined words that the legislature enacted. In any case, it is objectively reasonable for an officer to believe that a person who is driving a vehicle with an altered plate is doing so either intentionally or knowingly. At best, defendant's argument would support a defense to the violation; it is irrelevant to the existence of probable cause. Second, defendant again ignores the "not limited to" provision of ORS 803.550(2). The fact that the legislature expressly prohibited frames or plate holders that obscured registration stickers does not indicate that it intended to permit other things that also obscured them, including things that it may not have expressly contemplated. Indeed, the legislature often uses "not limited to" to indicate that a person may violate a statute in ways that the legislature did not expressly contemplate. Moreover, whether or not the legislature was primarily concerned with registration numbers and letters, it expressly prohibited obscuring the registration stickers, and nothing in the legislative history brings that prohibition into question.

Finally, defendant argues that, even if Sweeney had probable cause to believe that defendant had violated ORS 803.550, that probable cause dissipated when he approached the pickup and discovered that he could see the registration stickers by looking down at the license plate from directly above. Defendant relies on *State v. Farley*, 308 Or 91, 775 P2d 835 (1989), to support that argument. In *Farley*, the officer stopped the defendant for failing to display license plates. On approaching the defendant's vehicle, however, the officer noticed a temporary vehicle permit on the windshield. Under the relevant law, that permit was an adequate substitute for the missing license plates. As a result, the Supreme Court held, the probable cause that had originally supported the stop no longer existed, and the officer no longer had the authority to proceed with investigating a traffic violation; there was no violation to investigate. The trial court, therefore, correctly suppressed the evidence that the officer obtained after the stop exceeded its legal limits. *Id.* at 93-94.[4]

---

[4] Defendant also relies on *State v. Dominguez-Martinez*, 321 Or 206, 895 P2d 306 (1995). *Dominguez-Martinez* does not state any principles that are relevant to this case beyond the holding in *Farley*.

The obvious distinction between *Farley* and this case is that Sweeney's ability to see the entire license plate when he was standing directly above the bumper is not relevant to whether he had probable cause to believe that a violation occurred. The statute prohibits covering or obscuring a license plate. The bumper covered an essential portion of defendant's license plate when the officer viewed it from the angle that it would most commonly be viewed. In ORS 803.550(2)(b), the legislature prohibited any material placed "in front of" a license plate that altered its appearance. That suggests that the legislature recognized that there could be a gap between the covering material and the plate through which one might be able to see the entire plate, which is exactly how the bumper functioned in this case. In *Farley*, when the officer saw the permit in the windshield, he knew that the apparent violation for which he had stopped the defendant in fact had not occurred. In this case, when the officer saw the entire plate from an unusual position, he still knew that he could not see the registration sticker from a normal position. As a result, the officer continued to have probable cause to believe that defendant had committed a traffic violation. The stop was lawful; because defendant does not challenge what followed the stop, we therefore affirm his conviction.

Affirmed.