Submitted July 31, affirmed September 26, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JONATHAN ASA ORDNER,
*Defendant-Appellant.*

Josephine County Circuit Court
09CR0715; A147508

287 P3d 1256

Peter Gartlan, Chief Defender, and Jonah Morningstar, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Douglas F. Zier, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Brewer, Judge, and Duncan, Judge.

BREWER, J.

**BREWER, J.**

Defendant appeals from a judgment of conviction for possession of marijuana, ORS 475.864(2), and driving under the influence of intoxicants (DUII), ORS 813.010(4), that the trial court entered following his conditional guilty pleas to those offenses. In a single assignment of error, defendant asserts that the trial court erred in denying his motion to suppress evidence obtained as a result of the underlying traffic stop. We review for errors of law, *State v. Riddle*, 149 Or App 141, 144, 941 P2d 1079, *rev den*, 326 Or 68 (1997), and affirm.

Officer Hamilton was parked near downtown Grants Pass when he saw defendant drive by. Hamilton turned onto the street behind defendant and began driving in the same direction. Defendant illuminated his right-turn signal and turned right onto a side street. Hamilton believed that defendant had failed to signal for at least 100 feet before turning right and that defendant had turned too widely, so that his car was "straddling" the reflectors placed in the center of the side street that he had turned onto as he executed the turn. Hamilton stopped defendant; in the course of the stop, Hamilton made observations and obtained statements and other evidence that ultimately led him to arrest defendant for the charged offenses.

The events were recorded on the officer's patrol car video equipment. Using reference points from that video, the officer later measured the distance that defendant had operated his turn signal and determined that distance to be 96.4 feet. At the suppression hearing, Hamilton testified as follows while the video recording was being played:

"You can see in the center [of the street onto which defendant turned] there's reflectors and as I make my turn you can see he's in the center going down the center of the road, of the reflectors. And then he drifts back over to the right."

Hamilton further explained, "And you can see as he makes his turn he's going down the center rather than in his side. And you can see as he gets farther down he drifts back in to his lane."

Defendant did not contend that the officer lacked a subjective belief that defendant had committed traffic infractions. Instead, defendant disputed the objective reasonableness of the officer's belief that he had committed infractions. In particular, defendant presented an investigator's opinion testimony—based on his review of the video recording—that defendant had signaled between 177 and 204 feet before making the turn and that defendant had remained on the right side of the road after making his turn onto the side street.

At the conclusion of the suppression hearing, defendant argued that the officer's subjective belief that defendant had committed traffic infractions was objectively unreasonable. Defendant asserted that, "under the totality of—of what you've heard today * * * the stop was objectively unreasonable under the circumstances and any evidence obtained as a result of that stop needs to be suppressed." The prosecutor replied that the officer's subjective belief that defendant had committed two separate traffic infractions was objectively reasonable and that the officer therefore had probable cause to stop defendant. Neither party focused on any particular traffic statute in making their respective opposing arguments.

The trial court declined to make any finding about the reasonableness of the officer's subjective belief about defendant's signaling distance, but the court concluded that the officer's subjective belief that defendant had made an unlawful wide turn was objectively reasonable. In particular, the court noted that 5th Street—the side street onto which defendant turned—was not "well marked" but that the reflectors in the middle of the street, as described by the officer, were visible on the video. Noting that it had watched the video three times, the court explained that, on its initial viewing, it "seemed clear" that the officer could believe defendant crossed over the center line; on its second viewing, however, the court was not so sure; and on its third viewing:

"[I]t certainly appeared to me that [defendant] was over the centerline right after the turn, I think that I must fin[d] that the officer had—was objectively—acting objectively reasonably in connection with his subjective belief that the

traffic infraction of failing to maintain a lane or driving over the centerline had occurred at that point."

In denying defendant's motion to suppress, the trial court opined that the officer had probable cause to believe that defendant had violated ORS 811.370 (failure to drive within a lane), and ORS 811.310 (crossing the centerline).[1] As noted, defendant appeals from the judgment of conviction that the court entered based on his ensuing conditional guilty pleas.

When a defendant moves to suppress evidence obtained pursuant to a warrantless seizure, the state has the burden of demonstrating the lawfulness of the seizure. *State v. Sargent*, 323 Or 455, 461, 918 P2d 819 (1996). The state may meet its burden by proving that the officer who seized the defendant had probable cause to believe that the defendant had committed a traffic offense. *State v. Isley*, 182 Or App 186, 190, 48 P3d 179 (2002). "Probable cause exists if, at the time of the stop, the officer subjectively believes

---

[1] ORS 811.370 provides, in part:

"(1) Except as provided in subsection (2) of this section, a person commits the offense of failure to drive within a lane if the person is operating a vehicle upon a roadway that is divided into two or more clearly marked lanes for traffic and the driver does not:

"(a) Operate the vehicle as nearly as practicable entirely within a single lane; and

"(b) Refrain from moving from that lane until the driver has first made certain that the movement can be made with safety."

ORS 811.310 provides, in part:

"(1) A person commits the offense of crossing the center line on a two-way, four-lane road if the person is operating a vehicle on a two-way roadway that has four or more lanes for moving traffic and the person drives to the left of the center line of the roadway.

"(2) A person is not prohibited from driving to the left of the center line of a roadway by this section under the following circumstances:

"(a) When authorized by a traffic control device designating certain lanes to the left side of the center of the roadway for use by traffic.

"(b) When an obstruction or condition exists making it necessary to drive to the left of the center of the roadway, provided that a driver doing so shall yield the right of way to all vehicles traveling in the proper direction upon the unobstructed portion of the roadway within a distance as to constitute an immediate hazard.

"(c) When making a left turn at an intersection, alley or private road or driveway."

that the infraction occurred" and that belief is objectively reasonable. *Id.* In *State v. Boatright*, 222 Or App 406, 410, 193 P3d 78, *rev den*, 345 Or 503 (2008), we summarized the general principles circumscribing our inquiry into whether an officer's belief is "objectively reasonable":

> "[A]n officer's belief may be objectively reasonable even if it turns out to be incorrect. Thus, probable cause may be based on a mistake of fact. Moreover, probable cause may be based on a mistake as to *which* law the defendant violated. Nevertheless, in order to satisfy the objective component, the facts that the officer perceives to exist must establish the elements of *an* offense, even if not the offense that the officer believed the defendant committed. Finally, although the facts as perceived by the officer must constitute the elements of an offense, in order to satisfy the objective component, an officer need not eliminate the possibility that a defense or exception to the offense applies."

(Internal citations omitted.) "[A]n officer's subjective belief that a traffic infraction occurred is objectively reasonable if, and only if, the facts as the officer perceived them actually satisfy the elements of a traffic infraction." *State v. Tiffin*, 202 Or App 199, 204, 121 P3d 9 (2005).

Defendant asserts that the trial court erred in concluding that the officer's subjective belief that defendant had committed a traffic violation by straddling the centerline was objectively reasonable based on ORS 811.310. Defendant correctly observes—and the state concedes—that the trial court was mistaken in relying on that statute because "a person cannot commit this offense on a roadway that has fewer than four lanes[.]" The video of the traffic stop demonstrates that the street that defendant turned onto did not have four or more lanes. Defendant also correctly asserts that the trial court was mistaken in concluding that the officer's subjective belief that defendant had made an unlawful wide turn was objectively reasonable based on ORS 811.370. That statute applies only where the "roadway * * * is divided into two or more clearly marked lanes for traffic." Defendant acknowledges that he "crossed the reflectors placed on the center of the roadway on 5th Street." However, as defendant notes, the video confirms that that street lacked clearly marked lanes for traffic. It

follows that neither statute on which the trial court relied justified the court's conclusion that the officer's subjective belief was objectively reasonable.

However, that is not the end of the matter. Although the state has the burden of identifying the specific conduct that constitutes the infraction that the officer has probable cause to believe was committed, a misidentification of the statute that applies to the conduct is not dispositive. *See State v. Matthews*, 320 Or 398, 404, 884 P2d 1224 (1994) (holding stop was lawful based on a statute not relied upon by the state before the trial court). For example, in *State v. Doherty*, 92 Or App 105, 757 P2d 860, *rev den*, 306 Or 660 (1988), an officer observed the defendant drive from a parking lot and accelerate to a high speed, and he heard a loud engine noise. The officer stopped the defendant and gave him a citation for "exhibition of acceleration" in violation of ORS 811.125(1)(d). The defendant moved to suppress evidence obtained after the stop, arguing that the stop was invalid because there was no objective basis to believe that he had committed the offense for which he was stopped. The trial court agreed that the basis identified by the officer was wrong, but concluded that there was an objective ground to believe that the defendant had committed the separate traffic infraction of causing unreasonable noise with his vehicle. ORS 815.025. We agreed and held:

> "Although the officer did not cite defendant for causing unreasonable noise, the facts relied upon by the officer, when viewed objectively, provided probable cause to believe that that traffic infraction had been committed."

*Id.* at 107.

In *Matthews*, the defendant contended that the arresting officer's testimony failed to establish that he had probable cause to believe that an infraction had occurred because the officer was unsure whether the defendant's headlights were improperly adjusted or were, instead, on the bright setting. The defendant argued that only the latter was a violation of the Motor Vehicle Code and that, because each was equally possible, the state had not met the

probable cause standard. The Supreme Court rejected that argument based on a different statute, ORS 816.050(7), and administrative rules promulgated pursuant thereto, that did prohibit driving with maladjusted headlights. The court said:

"We agree with the state that those rules are applicable. Notwithstanding [the officer's] uncertainty about the manner in which defendant's headlights violated the law, or his inability to identify the specific law that defendant's headlights violated, it is clear from [the officer's] testimony that the events that he observed caused him to believe that defendant had committed an infraction. Because those events probably constituted an infraction, his belief was objectively reasonable under the circumstances. Accordingly, [the officer] had probable cause, at the time he stopped defendant, to believe that defendant had committed a traffic infraction in his presence. The stop was lawful."

320 Or at 404 (footnote omitted).

In this case, for the first time on appeal, the state has directed the court's and defendant's attention to ORS 811.295 and ORS 811.305, both of which, the state asserts, proscribe the driving conduct that defendant committed in the officer's presence.[2] As noted, the state acknowledges that the statutes on which the trial court relied *sua sponte* are inapplicable here, but it asserts that ORS 811.295 and ORS 811.305 apply because neither is limited to roadways with two or more lanes "clearly marked for traffic."

Defendant protests that the state's failure to rely on ORS 811.295 and ORS 811.305 at trial "thwarted his ability to meet the argument and thereby prevented defendant from developing the record relating to those

---

[2] ORS 811.295(1) provides:

"A person commits the offense of failure to drive on the right if the person is operating a vehicle on a roadway of sufficient width and the person does not drive on the right half of the roadway."

ORS 811.305(1) provides, in pertinent part:

"A person commits the offense of driving on the left on a curve or grade or at an intersection * * * if the person is operating a vehicle upon any two-way roadway where traffic is permitted to move in both directions simultaneously and the person drives on the left side of the center of the roadway: * * *

"* * * * *

"(c) At any intersection[.]"

purported infractions." Defendant relies on our decision in *State v. Elmore*, 241 Or App 419, 250 P3d 439 (2011), for the proposition that the trial court's mistaken reliance on different statutes was not "right for the wrong reason."[3] In *Elmore*, the prosecutor and the trial court had relied on an officer's assertion of probable cause to believe that the defendant had violated ORS 815.220 (driving with view-obstructing materials on a windshield). *Id.* at 421-23. On appeal, the defendant argued that he had not violated that statute because the crack in his windshield did not constitute "material" within the meaning of ORS 815.220. *Id.* at 423. For the first time on appeal, the state argued, alternatively, that four different statutes provided probable cause to justify the warrantless seizure: ORS 815.270 (operating a vehicle with an obstructed driver), ORS 815.100 (operating a vehicle that violates Department of Transportation standards), ORS 815.020 (operating an unsafe vehicle), and ORS 815.210 (operating a vehicle with a windshield that does not comply with Department of Transportation standards). *Id.* at 423-24.

We rejected the state's right for the wrong reason argument, reasoning that

"the state's argument in the trial court focused exclusively on ORS 815.220—that is, the state did not point to any of the statutes that it now raises on appeal. Had the state attempted to rely on those statutes in the trial court, defendant might well have developed the record differently."

*Id.* at 427. In doing so, we relied on *Tiffin*, where we had rejected a similar argument after concluding that, "had the state [asserted its appellate argument to the trial court], defendant might have developed a different record below." 202 Or App at 202.

According to defendant, here, as in *Elmore*, the state's failure to first raise its appellate argument in the trial court

---

[3] *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001) (right for the wrong reason doctrine requires that "the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below").

"creates the same problem with the record's development. With respect to ORS 811.295 (failure to drive on the right side of the road), the state is correct that that statute requires a driver to drive on the right side of the road 'on a roadway of sufficient width[.]' However, defendant did not have an opportunity to make a record of how wide the road that he turned onto was and whether the road was of 'sufficient width' to allow his car to complete the turn without momentarily crossing the reflector placed in the center of the roadway.

"Similarly, although ORS 811.305 (driving on the left side of an intersection) forbids driving on the left side of an intersection on a roadway with two-way traffic, the state's failure to mention this statute at the suppression hearing prevented defendant from developing a record of whether the road that defendant was driving on had two-way traffic and whether defendant's car was still within the 'intersection' at the moment that his car briefly crossed the reflector placed in the center of the roadway. Put simply, at the suppression hearing defendant had no reason to develop the record on whether the officer had probable cause to believe that he had violated ORS 811.295 (failure to drive on the right side of the road) or 811.305 (driving on the left side of an intersection) because those statutes were irrelevant to whether there was probable cause to believe that he had violated ORS 811.370 (failure to drive within a lane) or ORS 811.310 (crossing the centerline) as the state argued to the trial court."

To explain why we reject defendant's argument, we begin with a quibble about the record. Contrary to defendant's assertion, the state did not rely on any particular statute before the trial court in asserting that the officer had probable cause to believe that defendant's conduct constituted a traffic infraction. The trial court first mentioned the particular statutes on which it relied in making its ruling at the conclusion of the suppression hearing. Moreover, defendant did not assert before the trial court that the state's proof was deficient because neither the officer nor the prosecutor had identified any particular statutory violation that defendant had committed. Rather, the parties' arguments focused exclusively on the driving conduct in which defendant had engaged in light of the video recording of the encounter that the state adduced in evidence.

In that regard, defendant's own expert witness reviewed the video recording and opined that, "[t]o me it appeared a normal turn, that he stayed within the lane, might have came near the centerline, but I didn't see anything where he went over the centerline and certainly didn't straddle it, in my opinion." In short, both parties understood that the dispositive issue was whether, as a matter of fact, the officer correctly had discerned that defendant had not stayed within his lane in making his turn onto the side street. Defendant never argued that, if the officer's observation was correct, no traffic infraction had occurred.

So understood, this case is readily distinguishable from *Elmore* and *Tiffin*. In *Tiffin*, we declined to consider the state's alternative reliance on appeal on a different set of statutes because they did not even involve the same conduct on which the officers had relied in making their own probable cause assessment. We said:

> "Here, the state's argument to the trial court focused exclusively on ORS 811.130 [impeding traffic], and defendant had no occasion to develop a record about whether the officers suspected that he had been driving under the influence of intoxicants and whether any such suspicion was reasonable."

202 Or App at 202-03. Similarly, in *Elmore*, the problem was that the officer had suspected a violation of ORS 815.220 (obstruction of vehicle windows), whereas, for the first time on appeal, the state speculated that, alternatively, defendant "possibl[y]" or "potentially" violated other statutes—*viz.*, ORS 815.270 (operating a vehicle that is loaded or equipped to obstruct the driver), ORS 815.100 (operating a vehicle that violates certain Department of Transportation standards), ORS 815.020 (operating an unsafe vehicle), and ORS 815.210 (operating a vehicle without approved materials in the windows, *i.e.*, "a windshield or windows that do not conform" to Department of Transportation standards). 241 Or App at 442. Relying on *Tiffin*, we properly declined to endorse such speculation, because the alternatively posited infractions involved different operative facts upon which the record, if the defendant had been alerted, could have been developed differently. *Elmore*, 241 Or App at 443-44.

That is not the circumstance here. Although defendant argues with respect to ORS 811.295 (failure to drive on the right side of the road) that he did not have an opportunity to make a record of the width of the road that he turned onto and whether the road was of sufficient width to allow his car to complete the turn without crossing the reflector placed in the center of the roadway, the video recording in this case provided indisputable visual evidence of those circumstances and conditions. Similarly, defendant argues with respect to ORS 811.305 (driving on the left side of an intersection) that the state's failure to mention that statute at the suppression hearing prevented him from developing a record as to whether the road onto which he turned had two-way traffic and whether defendant's car was still within the intersection when his car crossed the reflector placed in the center of the roadway. However, defendant does not suggest that the video evidence did not provide an accurate and complete factual record with respect to those issues.

We reiterate that the problem in this case did not involve the state's urging the trial court to apply an inapposite statute to the probable cause determination; defendant was content before the trial court to litigate the general issue of whether he had strayed to the wrong side of the road in making his turn onto the side street. Indeed, using the video recording that was admitted into evidence, defendant's expert weighed in on that question. Moreover, unlike the circumstances in *Tiffin* and *Elmore,* the statutes upon which the state relies on appeal here involve the same general set of operative facts—that is, whether defendant was driving on the right side of the road—as the statutes upon which, *sua sponte,* the trial court mistakenly relied in making its ruling. In these circumstances, we discern no substance to defendant's protest that a different record would have been developed before the trial court if the state had specifically relied on ORS 811.295 and ORS 811.305 in that forum.

The question remains whether, based on either of those statutes, the officer's belief that defendant had committed a traffic infraction was objectively reasonable. In that regard, defendant contends that the state failed to

prove that defendant violated either statute. With respect to ORS 811.295, defendant asserts that

> "the act of momentarily crossing a reflector placed in the center of the road does not constitute the failure to 'operat[e]' a vehicle on the right side of the road, and, equally important, there is no evidence tending to show that the roadway was sufficiently wide to allow defendant to execute the turn without briefly operating his vehicle beyond the right side of the road."

In order to assess defendant's argument, we have carefully examined the video evidence in the record. Suffice it to say that that evidence is consistent with the officer's testimony that

> "[y]ou can see in the center [of the street onto which defendant turned] there's reflectors and as I make my turn you can see he's in the center going down the center of the road, of the reflectors. And then he drifts back over to the right."

The video recording also showed that it was objectively reasonable for the officer to believe that the roadway was of sufficient width for defendant to have driven on the right half of the roadway. In sum, that visual evidence made it objectively reasonable for the officer to believe that defendant had committed the offense of failure to drive on the right under ORS 811.295 by operating a vehicle on a roadway of sufficient width and failing to drive on the right half of the roadway.

Because the officer had probable cause to believe that defendant had committed the offense of failure to drive on the right, the ensuing traffic stop was lawful, and the trial court properly denied defendant's motion to suppress.[4]

Affirmed.

---

[4] Based on that conclusion, we need not address the state's alternative argument that the officer had probable cause to believe that defendant had violated ORS 811.305.