Submitted December 6, 2018, vacated and remanded December 4, 2019

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# MILO DELFORD DERBY, JR.,
*Defendant-Appellant.*

## Lane County Circuit Court
### 15CR48044; A164616

455 P3d 1009

After a traffic stop, defendant was convicted of driving while suspended, ORS 811.182(4). On appeal, he challenges the trial court's denial of his pretrial motion to suppress evidence obtained during the stop. Defendant asserts that the officer lacked probable cause to stop him for a traffic violation and therefore violated Article I, section 9, of the Oregon Constitution. The trial court denied the motion to suppress on the basis that the officer had probable cause to stop defendant for failure to maintain a lane, ORS 811.370. On appeal, the state concedes that, because the lane in which defendant was traveling was not clearly marked, the trial court erred in denying defendant's motion on that basis. However, the state argues, as an alternative basis to affirm, that the officer had probable cause to stop defendant for careless driving, ORS 811.135. The state also made that argument to the trial court, but the trial court did not reach it. *Held*: The state's concession is well taken; the trial court erred in denying defendant's motion to suppress on the basis that the officer had probable cause to stop defendant for failure to maintain a lane. As for the alternative basis to affirm, whether the officer had probable cause to stop defendant for careless driving is an issue that was raised but not resolved in the trial court, and factual findings are necessary to decide the legal question. Accordingly, the appropriate disposition is to remand to the trial court to determine the potentially dispositive questions of fact in the first instance.

Vacated and remanded.

Maurice K. Merten, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Laura E. Coffin, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Matthew Maile, Assistant Attorney General, filed the brief for respondent.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.

AOYAGI, J.

Vacated and remanded.

**AOYAGI, J.**

Defendant appeals a judgment of conviction for driving while suspended, ORS 811.182(4). He assigns error to the trial court's denial of his pretrial motion to suppress evidence obtained as a result of a traffic stop. Defendant asserts that the officer who stopped him lacked probable cause to do so and therefore violated defendant's right to be free from unreasonable searches and seizures under Article I, section 9, of the Oregon Constitution. For the reasons that follow, we vacate and remand.

In reviewing the denial of a motion to suppress, we are bound by the trial court's findings of historical fact if there is constitutionally sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). That applies to both express and implied factual findings. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968) (if the trial court did not make findings on all relevant historical facts, and the evidence allowed the facts to be decided more than one way, "we will presume that the facts were decided in a manner consistent with the ultimate conclusion"). However, we will infer a finding of fact "only where we can deduce that the trial court's chain of reasoning must necessarily have included that fact as one of its links." *State v. Lunacolorado*, 238 Or App 691, 696, 243 P3d 125 (2010). We state the facts accordingly.

On the evening in question, defendant was driving a Subaru station wagon northbound on Territorial Road. For reasons unclear from the record, the Subaru caught the eye of Deputy Dornbusch, who was driving southbound in his patrol car. Dornbusch turned around, pulled in behind the Subaru, and followed it. The Subaru activated its turn signal and turned right onto Cottage Court, a smaller road that ends in a cul-de-sac.

What the officer saw next is the subject of dispute. According to Dornbusch's testimony at the suppression hearing, shortly after turning onto Cottage Court, the Subaru "pulled to its right, drifted to the right outside of its lane." Dornbusch could see defendant looking at him in his rearview mirror. The Subaru came within a foot of a vehicle legally parked on the side of the road. The Subaru then

"[s]uddenly jerked back into its lane, continued forward." The Subaru was going "[f]airly slow" at the time, approximately 10 miles per hour, and it moved to the right a total of six or seven feet. There was room to do so because the road was "fairly wide." Defendant might have used his turn signal when he pulled back to the left. In his report, Dornbusch wrote that it "looked as if the driver was going to park." Asked about that statement at the suppression hearing, Dornbusch explained, "He drifted as if he was—that was kind of the best way I could think to describe it at the time. Drifted over as if he was going to park, but there were cars parked in the spot that would have been lawful to park in."

Defendant's passenger, Tanner, also testified at the suppression hearing. According to Tanner, defendant was driving about five to 10 miles per hour on Cottage Court. They were preparing to turn around, because they had forgotten something, when Tanner asked defendant what he was doing, and defendant responded that he thought he was going to get pulled over. Defendant was looking in the rearview mirror at the time. Tanner told him, "You can't park here. *** It's in front of—you're blocking—you would be blocking somebody's driveway." According to Tanner, defendant then quickly adjusted, turned his steering wheel the opposite way, and "hit his blinker" as he maneuvered around a van parked just beyond the edge of the driveway. Defendant got somewhat close to the van in the process, because he was planning to park right behind it, but, in Tanner's estimation, it "wasn't that close"—she estimated four or five feet.

As soon as defendant pulled back to the left, Dornbusch activated his lights for a traffic stop. At the time, Dornbusch believed that he had probable cause to stop defendant for failure to maintain a lane, because the Subaru was "well outside of its lane" and "[t]here was plenty of room to drive within the center of the lane and to the left, closer to the dividing line in the roadway." Dornbusch believed that he also had probable cause to stop defendant for careless driving, "[b]ecause the driver was obviously looking up in his rearview mirror and not at the roadway, which caused him to drift off the side and come within a foot of striking this parked car that could have caused property damage."

During the stop, Dornbusch learned that defendant's license was suspended.

Defendant was charged with driving while suspended. Before trial, defendant moved to suppress the evidence obtained during the traffic stop. Defendant argued that Dornbusch lacked probable cause to stop him for failure to maintain a lane, because, among other things, there was no right-side lane marking, and that Dornbusch lacked probable cause to stop him for careless driving, because defendant's aborted attempt to park did not constitute careless driving. The state opposed the motion, arguing that Dornbusch had probable cause for both violations.

The trial court denied the motion to suppress, ruling that "the deputy had probable cause to stop the defendant for the traffic infraction of failure to maintain a single lane." The court did not make express factual findings. The court did not reach the issue of whether Dornbusch had probable cause to stop defendant for careless driving.

The parties proceeded to a stipulated facts trial. Defendant was convicted of driving while suspended. He appeals the resulting conviction, challenging only the denial of his motion to suppress.

To stop and detain a person for a traffic violation, the officer must have probable cause to believe that the person has committed a violation. *State v. Matthews*, 320 Or 398, 402, 884 P2d 1224 (1994). Probable cause has two components. First, at the time of the stop, the officer must subjectively believe that a violation has occurred, and, second, that belief must be objectively reasonable under the circumstances. *State v. Miller*, 345 Or 176, 186, 191 P3d 651 (2008); *State v. Tiffin*, 202 Or App 199, 203, 121 P3d 9 (2005). For an officer's belief to be objectively reasonable, the facts, as the officer perceives them, must actually constitute a traffic violation. *Tiffin*, 202 Or App at 203. Here, there is no dispute that Dornbusch subjectively believed that the referenced violations had occurred. The question is the objective reasonableness of that belief.

On appeal, the state concedes that the trial court erred in concluding that Dornbusch had probable cause to

stop defendant for failure to maintain a lane. As relevant here, a person commits that offense "if the person is operating a vehicle upon a roadway that is divided into two or more clearly marked lanes for traffic" and does not (a) "[o]perate the vehicle as nearly as practicable entirely within a single lane" and (b) "[r]efrain from moving from that lane until the driver has first made certain that the movement can be made with safety." ORS 811.370(1). Here, the undisputed evidence was that there was no fog line or other demarcation of the right side of the lane in which defendant was driving—*i.e.*, the lane was not clearly marked. *See State v. Ordner*, 252 Or App 444, 448-49, 287 P3d 1256 (2012), *rev den*, 353 Or 280 (2013) (recognizing that ORS 811.370 applies only to roadways with "clearly marked lanes for traffic," and stating that, where the defendant had been driving on a street with no lane markings except center reflectors, the trial court could not conclude that an officer's belief that a violation of ORS 811.370 had occurred was objectively reasonable). We therefore accept the state's concession that the trial court erred in denying defendant's motion to suppress on the basis that it did.

The state argues that we should nevertheless affirm the trial court's denial of defendant's motion on the alternative basis that Dornbusch had probable cause to stop defendant for careless driving. A person commits the offense of careless driving "if the person drives any vehicle upon a highway or other premises described in this section in a manner that endangers or would be likely to endanger any person or property." ORS 811.135(1). The state argues on appeal, as it did in the trial court, that the evidence at the suppression hearing was sufficient to establish that Dornbusch had probable cause to stop defendant for careless driving.

Whether a particular set of facts establishes probable cause to stop someone for a traffic violation is a question of law that we review for legal error. *State v. Husk*, 288 Or App 737, 739, 407 P3d 932 (2017), *rev den*, 362 Or 665 (2018). The difficulty in this case, however, is that we do not have an established set of facts to work from. The trial court never ruled on whether Dornbusch had probable cause to

stop defendant for careless driving, and its disposition obviated the need to make express or implied findings relevant to that issue.

In ruling as it did regarding failure to maintain a lane, the trial court implicitly found *either* (1) that defendant was not trying to park and failed to operate his vehicle as nearly as practicable entirely within a single lane, *or* (2) that defendant was trying to park but failed to refrain from moving from his lane until he had first made certain that he could do so safely.[1] Given those alternative possibilities, the trial court must have made a silent finding as to whether defendant was trying to park or not, but, under these circumstances, we cannot discern what that finding was. Moreover, the evidence at the suppression hearing raised other factual issues, relevant to careless driving but not to failure to drive in a lane, that the trial court presumably did not resolve because it had no need to do so given its disposition. At this point, there are unresolved factual questions about, at a minimum, whether defendant's movement of his vehicle to the right appeared to be intentional or unintentional (Dornbusch himself variously described the vehicle as having "pulled" to the right, "drifted" to the right, and "[d]rifted over as if he was going to park"); how slowly defendant was driving (Dornbusch estimated 10 miles per hour, while Tanner estimated 5 to 10 miles per hour); whether defendant used his turn signal when he moved back to the left (the officer did not recall, but Tanner testified that he did); and how close defendant's vehicle came to the parked van (Dornbusch estimated one foot, while Tanner estimated four or five feet).[2]

---

[1] If a driver is moving forward in a clearly marked lane, any deviation from the lane—except possibly a truly *de minimis* one—may constitute failure to maintain a lane. *State v. Rosling*, 288 Or App 357, 361-62, 406 P3d 184 (2017), *rev den*, 362 Or 389 (2018); *see also State v. McBroom*, 179 Or App 120, 124, 39 P3d 226 (2002) (for purposes of ORS 811.370, driving "within a single lane" means that drivers must stay "within" the lines, which does not include driving "on" the lines). Conversely, when a driver is intentionally moving out of a lane, such as to change lanes or park, the driver need not stay in the lane, obviously, but must "[r]efrain from moving from the lane until the driver has first made certain that the movement can be made with safety." ORS 811.370(1)(b).

[2] An officer's belief that he has probable cause to stop a person for a traffic violation is objectively reasonable if the facts "as the officer perceives them" constitute a violation. *Tiffin*, 202 Or App at 203. Thus, the probable-cause analysis

When a party argues an alternative basis to affirm that was raised but not resolved in the trial court, and factual findings are necessary to decide the legal question, we "will ordinarily remand to the trial court to determine potentially dispositive questions of fact in the first instance." *State v. Lovaina-Burmudez*, 257 Or App 1, 14, 303 P3d 988 (2013).[3] Thus, where "the need for a finding on a certain critical fact was obviated by the trial court's erroneous legal conclusions," and the existing record contains "potentially conflicting evidence on that critical fact," remand is appropriate. *State v. Grover*, 193 Or App 165, 173, 90 P3d 8 (2004) (italics omitted); *see also, e.g.*, *State v. Castillo*, 295 Or App 121, 132, 433 P3d 467 (2018), *rev den*, 364 Or 749 (2019) (remanding for trial court to determine whether certain statements made by the defendant were voluntary, where that issue had been raised but not resolved in the trial court, was presented on appeal as an alternative basis to affirm, but required factual findings to resolve).

That is the case here. Accordingly, we vacate and remand for the trial court to make findings and to decide in the first instance whether Dornbusch had probable cause to stop defendant for careless driving.

Vacated and remanded.

---

turns on what the officer *perceived*, not the objective "truth" of the situation. It does not follow, however, that the trial court must blindly accept an officer's testimony as to what the officer perceived. The trial court still must assess witness credibility and resolve factual disputes about what the officer saw. *See, e.g.*, *Ordner*, 252 Or App at 447 (in deciding whether an officer's subjective belief that the defendant had made an unlawful wide turn was objectively reasonable, the trial court relied heavily on its own review of a video recording).

[3] If the state had *not* argued to the trial court that the officer had probable cause to stop defendant for careless driving, the state would face other hurdles in persuading us to affirm on that alternative basis. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (articulating a three-factor test to determine whether an issue not raised in the trial court is appropriate to be considered for the first time on appeal, and recognizing that, even if it is, we have discretion whether to affirm on that basis). But the state did make the argument below in this case.